IRVING TRUST COMPANY, as Trustee in Bankruptcy of CLIFFOYD MANUFACTURING COMPANY, Respondent, *v.* B. LINDNER & BRO., INC., Appellant.

166

(Argued March 23, 1934; decided April 17, 1934.)

*Eugene L. Bondy* for appellant. Where there is a contract to pledge personal property as security for a debt, delivery of the chattel to the creditor at any time before other intervening rights attach thereto validates the pledge as of the time of the agreement to pledge. (*Parshall* v. *Eggert*, 54 N. Y. 18; *Greeff* v. *Dieckerhoff*, 5 N. Y. Supp. 16; 123 N. Y. 658; *Sexton* v. *Kessler & Co.*, 225 U. S. 90; *Cartwright* v. *Wilmerding*, 24 N. Y. 521; *Goldstein* v. *Rusch*, 56 Fed. Rep. [2d] 10.) Section 45 of the Personal Property Law (Cons. Laws, ch. 41), as amended by chapter 766 of the Laws of 1931, cannot be construed as destroying a common-law pledge; its intendment is clearly to afford protection to a pledgee not in possession, upon the performance of certain conditions, and not to subtract from the rights of a pledgee in possession. (*Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388; *Transit Commission* v. *Long Island R. R. Co.*, 253 N. Y. 345; *Heyman* v. *Kevorkian*, 193 App. Div. 859; *Woollcott* v. *Shubert*, 217 N. Y. 212.)

*Daniel Levy* for respondent. Under section 45 of the Personal Property Law, as amended, defendant had no factor's lien on and after the date of the amendment to the statute. (*Matter of Brigham* v. *City of New York*, 227 N. Y. 575; *People* v. *Metropolitan Surety Co.*, 211 N. Y. 107; *Lemnos Broad Silk Mills, Inc.*, v. *Spiegelberg*, 127 Misc. Rep. 855; *Freeman* v. *Freeman*, 126 App. Div. 601; *Clary* v. *Fitzgerald*, 155 App. Div. 659; *Loewy* v. *Gordon*, 129 App. Div. 459; *Shoyer* v. *Wright-Ginsberg Co.*, 240 N. Y. 223; *Hyatt* v. *Taylor*, 42 N. Y. 258.)

HUBBS, J. Respondent is the trustee in bankruptcy of the Cliffoyd Manufacturing Company, herein referred

to as the bankrupt. Prior to March 3, 1930, the bankrupt conducted the business of selling textile merchandise. On that day it entered into a contract whereby it agreed to give to appellant a lien upon all merchandise manufactured or acquired by it and to assign to appellant its accounts receivable. The contract, in form a letter addressed by appellant to the bankrupt, referred to appellant as the bankrupt's " sole factors." The bankrupt's sales were to be made through the " medium " of defendant but not by it, the contract specifying that appellant should " at no time be responsible for the making of any contracts for the sale and purchase " of the bankrupt's merchandise " nor for the prices obtained, nor for the performance of any contracts whatsoever."

Customers' credits were to be approved before delivery of merchandise and upon such approval and final acceptance of the merchandise by the customer, appellant was to assume the credit risk for seventy days. Appellant reserved the right to withdraw its approval of orders taken, should the customer become insolvent or bankrupt before the physical delivery of the merchandise and to withdraw its guaranty of the accounts in cases where disputes as to goods, prices, delivery, etc., should not be promptly adjusted by the bankrupt. Appellant was to send out invoices and statements to customers, the accounts were to be payable to it, and it was to receive from the bankrupt payments made to the bankrupt. Appellant was to do the bookkeeping for the bankrupt, render monthly accounts of sales and collections, and pay over to the bankrupt its collections after deducting its expenses and a stipulated commission. Appellant was further to advance upon request of the bankrupt not exceeding seventy-five per cent of the assigned accounts approved by it, less charges. A supplemental agreement was entered into which did not materially change the original. Neither were ever filed nor was any notice of lien as to the merchandise involved ever given as specified

in section 45 of the Personal Property Law (Cons. Laws, ch. 41).

Between January 3, 1930, and June 9, 1931, appellant made loans and advancements to the bankrupt. On or about the 10th day of June, 1931, the Cliffoyd Manufacturing Company was adjudicated a bankrupt.

The respondent trustee, under a complaint setting forth thirteen causes of action, seeks to recover of appellant for the value of certain merchandise sold at public auction under a stipulation that the sale should be without prejudice to the rights of the parties and also for the value of merchandise delivered to the appellant within four months prior to the adjudication and subsequent to April 25, 1931, the effective date of an amendment to section 45 of the Personal Property Law. The respondent also seeks to recover collections made by appellant on certain assigned accounts within the four months' period; also for the credit balance due to the bankrupt by reason of transactions under the contract.

No question is raised on this appeal as to the sufficiency of the first three causes of action set forth in the complaint. The causes of action numbered " Fourth " to " Eighth," inclusive, involve merchandise delivered to the appellant and present the question as to whether section 45 of the Personal Property Law, as amended by chapter 766 of the Laws of 1931, which became effective April 25, 1931, prevented the acquisition by the appellant of a lien on that merchandise in view of the fact that it did not file and post the notice required by the statute. The answer to that question depends upon whether the appellant occupied to the bankrupt the relationship which was occupied by a factor to his principal under the common law.

Taking up the question presented by causes of action " Fourth " to " Eighth " inclusive, we should first examine section 45 of the Personal Property Law, prior to its amendment by chapter 766 of the Laws of 1931. By that

section, prior to the amendment, " liens upon merchandise or the proceeds thereof created for the purpose of securing the repayment of loans or advances made or to be made upon the security of said merchandise and the payment of commissions or other charges provided for by such agreement " were not void " by reason of want of delivery to or possession on the part of the lienor " if a notice giving the name of the lienor, the place of business of the lienor, the name of the person creating the lien, the character of the merchandise and the period of time during which loans or advances might be made under the agreement, be posted at the place where the merchandise was located and also filed.

Under that state of the law, the appellant, as to goods *not in its possession,* would have been protected only by filing and posting the required notice. As to *goods in its possession* delivered as security for a debt four months prior to an adjudication in bankruptcy, it would have been protected, since it would have occupied the position of a creditor in possession of merchandise of the debtor as security, and such a creditor would have had a common-law lien. (*Nagle* v. *McFeeters,* 97 N. Y. 196.)

There is authority also for the conclusion that appellant, as to goods which came into its possession during four months prior to the adjudication in bankruptcy, since it had, under the agreement, the right to possession, could have successfully defended its possession as against a trustee in bankruptcy. (*Sexton* v. *Kessler & Co.,* 225 U. S. 90, citing *Parshall* v. *Eggert,* 54 N. Y. 18.)

The respondent, while contending that the appellant is not a common-law factor, but rather a new type of factor for which liens have been created by legislative sanction, concedes that " the old section by positive inference recognized the validity of a lien upon merchandise in the possession of this new type of factor without requiring the filing of a notice in the form prescribed."

Lien rights similar to those contended for by the appellant were clearly recognized by statute and judicial interpretation prior to the enactment of the amendment to section 45. Whether that amendment imposed upon appellant a new condition is the precise question for determination.

The amendment does not initiate the procedure for the protection of a lien on merchandise or the proceeds thereof created by agreement for the securing of loans where the merchandise is not in the possession of the lienor. Such procedure was set forth in the act before its amendment and the provisions for posting and filing have not been changed in any material particular. The amendment does set forth with particularity when the notice specified shall have the effect of protecting the lien. Factors may, under the amendment, secure protection by giving the specified notice as to goods " pledged with them, whether in their constructive, actual or exclusive occupancy or possession or not." The term factor, " wherever used in this section," that is, the amended section, is defined as including " any consignee or consignees, pledgee or pledgees who advance money on goods consigned to, and /or pledged with, them, whether or not such consignees or pledgees are employed to sell such goods." The section is, by its terms, " to be construed liberally to secure the beneficial interest and purposes thereof." It further provides that " nothing in this section shall be construed as an abrogation of the lien of a factor at common law."

The amendment as a whole was clearly intended to amplify and particularize the applicability of the lien created by the original act without taking away common-law rights or rights expressly given by the act before its amendment. It does not follow, however, that the amendment did not have the effect of terminating the value as precedents of decisions by the courts interpreting the original statute as conferring by necessary implication

rights not expressly given. The amendment, so far as it indicates the purpose of the Legislature to particularize and amplify the subject covered by the original act, must be construed in the light of the language used, regardless of the fact that because of the absence of such particularization in the original statute, the courts may have implied a contrary intent from the prior expression of the Legislature as evidenced by the original act.

The amendment gives to factors, in cases where the written agreement with the principal so provides, a continuing general lien upon all goods and merchandise pledged with them *whether in their possession or not*, provided the prescribed notice is given. Section 45, before amendment, dealt only with merchandise not in the factor's possession, upon which a lien was given provided the notice was posted and the agreement was filed. The amendment gives a lien to factors both upon merchandise in the factor's possession and merchandise not in the factor's possession, but only in case the notice is posted and the agreement is filed. The amendment does not warrant the interpretation that as to the particular lien given, a factor is to have a lien where the goods are in his possession, without giving the prescribed notice, -and unless he would have had a lien at common law, which latter lien, if possessed, is not the lien provided by the amendment.

The appellant, concededly, did not give the notice as prescribed by the statute as to goods which came into its possession after the amendment became effective. The appellant contends that since the act says that the term factor, wherever used in the amendment, shall include a pledgee who advances money on goods pledged with it, whether or not it be employed to sell the goods, and that nothing in the section shall be construed as an abrogation of the lien of a factor at common law, and since a factor at common law had a lien upon goods in its possession, it must be held that these goods being in its possession

and it being a factor within the definition used in the section, it must have a common-law lien.

"The lien of a factor at common law," within the meaning of the last clause of the amendment, whether emphasis be placed on the word "lien" or on the word "factor," and without regard to the definition of the word "factor" as including a pledgee who advances money on goods pledged though not employed to sell them, when reasonably interpreted, can only be understood to mean a lien which did not come into existence through statutory enactment, the lien not of a factor who becomes such by legislative nomenclature and definition but of the "ordinary factor" as known to the common law. "The standard, presumptive meaning of the word ' factor ' does include and denote a selling agent." (*Shoyer* v. *Wright-Ginsberg Co.*, 240 N. Y. 223, 230, 232; *Duguid* v. *Edwards*, 50 Barb. 288, 295; *Howland* v. *Woodruff*, 60 N. Y. 73, 80.)

As suggested in *Shoyer* v. *Wright-Ginsberg Co.* (*supra*), under a particular contract, the definition of factor may have to yield to "commercial and trade usages and understanding at least in the locality" where the contract was made, and in accordance with such usages the word "factor" may no longer, under the circumstances involved in a particular litigation, indicate "a person enjoying the powers and bearing the responsibilities of a selling agent." All common-law lien rights existing by reason of a relationship of factor to principal are based upon the continuance of the duty and obligation resting upon an "ordinary factor" intrusted with the possession of goods and charged with the duty of selling them, and not by reason of the creation by the agreement of a relationship whereby the person termed a factor becomes a mere "commercial banker."

The contract here involved expressly negatives the idea that the parties ever intended that appellant was to assume the duties and obligations imposed upon an

" ordinary factor." It must be held, therefore, that the appellant did not acquire the lien of a factor at common law as to goods which came into its possession subsequent to the effective date of the amendment to section 45 of the Personal Property Law, and inasmuch as it did not file and post the notice required by that amendment, it failed to acquire the statutory lien provided thereby.

Cogent reason existed why the Legislature should have desired to accomplish the result which we believe the amendment did accomplish. Prior to the amendment an owner who had an agreement with a factor could, by transferring possession of merchandise to the factor within four months before bankruptcy, put the property transferred beyond the reach of his creditors, as the transfer was held to relate back to the date of the agreement (*Parshall* v. *Eggert, supra*), although creditors may have granted credit in the belief that the merchandise belonged to the person in whose possession it was free from any lien. The amendment has the effect of preventing the evasion of the Bankruptcy Law (30 Stat. 544; U. S. Code, tit. 11), in that manner by requiring that notice shall be posted and the agreement filed so that prospective creditors may have notice of the rights of the factor.

It follows that refusal to dismiss the " Fourth " to " Eighth " causes of action, inclusive, must be sustained since each is based upon a theory upon which the trustee might be entitled to recover the merchandise referred to in the absence of a common-law lien.

The " Ninth " to " Twelfth " causes of action, inclusive, are based upon the contention that appellant is liable for collections made by it within four months prior to the adjudication in bankruptcy on certain accounts which appellant contends were assigned to it. The contract provides that " all accounts are assigned to us in absolute ownership subject to our obligation to account, and we have the right to institute and maintain actions and proceedings to collect the same."

The original section 45 provides in substance that if the agreement creating a lien upon merchandise shall also give the lienor a right or lien upon accounts receivable resulting from a sale of the merchandise subject to the lien, such rights shall not be void by reason of want of possession of the accounts on the part of the lienor or by reason of failure to make or deliver a further assignment of such accounts, provided an invoice or notice shall be given to the person owing such account receivable, stating that the account is payable to the lienor.

The amended section provides in substance that if any agreement provides for a right to or lien upon accounts receivable or other proceeds resulting from a sale of merchandise, whether or not the merchandise is subject to the lien, such lien upon accounts receivable or the proceeds shall not be void, provided a similar statement or notice is given to the person owing each such account receivable.

Thus, while under the original section the lien on the accounts receivable was dependent upon a lien on the merchandise, under the section as amended no lien on the merchandise is required to support the lien on the accounts receivable and creditors are bound, provided notice that the amount due on the account is payable to the lienor be given to the person owing the account.

The question of notice to the persons who owed the accounts involved in causes of action " Ninth " to " Twelfth," inclusive, does not seem to be raised. The contract provides that appellant was to send out invoices in the name of the bankrupt, payable only to appellant at its office. It was to do the bookkeeping and it seems to be assumed that the accounts were in the possession of the appellant.

While, under the contract, the appellant was to guarantee accounts which it approved, it reserved the right to withdraw its guaranty as to any account where a dispute as to goods, prices, delivery, etc., should not

be promptly adjusted by the bankrupt. Where merchandise was returned by a customer, it was to be appellant's property unless released to the bankrupt and upon adjustment with the appellant returned merchandise was to be charged back and released to the bankrupt.

The theory of the trustee as set forth in the " Ninth " to " Twelfth " paragraphs of the complaint, inclusive, is that because the appellant was permitted from time to time to withdraw its guaranty as to certain accounts, it was obligated to and did charge back to the bankrupt's account the amount of such accounts receivable upon withdrawing its guaranty and the collections which respondent seeks to recover are collections on accounts thus charged back to the bankrupt. The respondent argues that if the bankrupt made an adjustment with his customer but was nevertheless charged back by the appellant with the amount of the account receivable, the charging back of the account would operate to give the bankrupt the ownership of the account.

The intent of the whole agreement seems to be that the appellant was to have and retain a lien upon all of the accounts of the bankrupt, whether or not guaranteed and whether or not advances were made thereon. Its compensation was based upon total sales of at least $175,000 per annum, upon which amount its factoring commission was to be based as a minimum.

While it undertook to guarantee, for a period of seventy days, all accounts approved by it, and the bankrupt, before delivering merchandise, was to have its customers' credits approved, the guaranty did not extend beyond the seventy-day period and might be withdrawn in the event of a dispute not properly adjusted. The obligation on the part of the appellant to make collections, to keep the books, to send out statements and to include such accounts in its monthly accounts to the bankrupt is not in terms stated to cease upon the cessation of its guaranty, and the contract specifically provides that all accounts

receivable are assigned in absolute ownership. There is no specific provision for the charging back of any such account to the bankrupt. It seems that the reasonable interpretation of the contract is that merchandise was not to be sold except to customers whose credit was approved; that upon the total of such approved sales the appellant's commission was based; that once it assumed obligations with respect to any such account, the account was assigned to it and its obligations and rights with respect thereto continued except as its obligations were specifically limited by the agreement — that is, the expiration of its guaranty after the prescribed period and its right to withdraw the guaranty in the event of an unadjusted dispute.

In this view of the contract it would not seem that the respondent has stated a cause of action in alleging " that as appears in Exhibit A and Exhibit B annexed hereto, the defendant was permitted from time to time to charge the bankrupt with the amount of accounts receivable upon which it had not assumed the credit risk as defined in said exhibits. * * * that from time to time the defendant duly charged back to the bankrupt and debited the bankrupt's account in connection with various accounts receivable, and thereby surrendered to the bankrupt any and all lien upon or claim to any and all proceeds which might thereafter arise from the collection, partial or entire, of any such accounts receivable so charged back to the account of the bankrupt by the defendant," and in further alleging, based upon such allegations, specific collections made on accounts charged back.

The theory of these causes of action is that by the terms of the contract the appellant did something whereby it lost its lien. If the contract be interpreted as giving to it a lien and as not providing for its loss or surrender in the manner claimed in the complaint, the foundation of the causes of action, so attempted to be based upon the

contract, fails. We believe the contract must be so interpreted and that respondent has failed to state a cause of action as to any of the causes attempted to be stated and numbered " Ninth " to " Twelfth," inclusive.

Under the " Thirteenth " cause of action the respondent seeks to recover a credit balance, claimed to be due on an alleged accounting made by the appellant to the respondent, in excess of the balance shown to be due by that account. Of that cause of action, the appellant complains because respondent has alleged a sum of $19,305.41 to have been improperly charged against the account of the bankrupt and because the complaint does not set forth the items which make up that amount. Appellant says that this cause of action alleges no ultimate facts capable of presenting an issue. The respondent says that the ultimate fact is the total amount which it says has been improperly charged against the bankrupt and that if the appellant wants to know the details, that is the office of a bill of particulars which it should have demanded. In that we believe the respondent is correct. Obviously, in a complaint based upon a long account, to attempt to set up each particular charge claimed to have been erroneously made, where the facts with regard to the account as a whole are in the possession of the defendant, would make an unnecessarily long pleading, and if a complaint is not sufficiently informative, the defendant has the right to require a bill of particulars which would furnish the same information.

The " Thirteenth " cause of action stated is sufficient and the order in that respect should be sustained; and also as to the causes of action numbered " Fourth " to " Eighth," inclusive. As to the causes of action numbered " Ninth " to " Twelfth," inclusive, the order should be reversed and those causes of action stricken from the complaint.

The order should be modified in accordance with this opinion, and as so modified affirmed, without costs. The

1st, 2d, 3d, 4th, 5th and 10th questions certified should be answered in the affirmative, and the 6th, 7th, 8th and 9th in the negative. (See 264 N. Y. 675.)

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN and CROUCH, JJ., concur; KELLOGG, J., not sitting.

Ordered accordingly.