## In re LION OVERALL CO., Inc.

District Court, S. D. New York.

Aug. 6, 1942.

Benjamin Siegel, of New York City, for Trustee.

Scribner & Miller, of New York City (Julius J. Rosenberg, of New York City, of counsel), for Clinton Trust Co.

BRIGHT, District Judge.

This dispute comes up on a petition by Nathaniel Walkof, trustee in bankruptcy, for a review of a referee's order denying his objections to a general claim for $5,-435.32, filed by the Clinton Trust Company, and allowing said claim. The facts are not disputed.

Some time prior to August 7, 1940, the Lion Company made a contract with the United States Army, Philadelphia Quartermaster Depot, for the delivery of working suits. J. P. Stevens & Co., Inc., was to furnish the cloth, and to insure its payment for the same, Lion authorized the Quartermaster Depot to send to Stevens all payments due Lion under the Army contract. It also authorized Stevens to endorse all such checks and payments and to retain 40% of each payment for the merchandise. Stevens agreed "that it will remit to the party of the first part (the Lion Company)

60% of the proceeds of each and every check * * * by depositing an amount equivalent to 60% of each such check * * * in the Clinton Trust Company * * * to the credit of 'Lion Overall Co. Inc., contract account'".

On September 11, 1940, Lion wrote a letter to the Trust Company, in which was stated that in consideration of the latter discounting the notes of the former and crediting the proceeds thereof to the contract account, the Trust Company was authorized to apply all or any part of the payments received from Stevens; and the Trust Company was further advised that Stevens had been instructed to forward the payments above mentioned to the Trust Company.

On November 28, 1940, Lion assigned to the Trust Company "any and all sums of money now due, to grow due, (including claims for damages, liquidated or otherwise, of every kind and nature), from J. P. Stevens & Co. Inc." arising out of the Army contract mentioned. On the same day, Lion also delivered to the Trust Company a general loan and collateral agreement, by which, among other things, as security for all loans and advances by the bank to Lion, the latter pledged to the bank, and gave it a lien on any incapable of pledge, every balance of deposit account in the bank, and all moneys and claims of every kind, which have been or at any time shall be delivered to the bank or any of its agents for the account of Lion.

On April 17, 1941, the involuntary petition was filed in this proceeding.

Between October 21, 1940, and January 23, 1941, Stevens received from the Quartermasters Depot, on account of the Lion suit contract, twenty checks aggregating $25,939.79. Between the same dates, and practically simultaneously with the receipt of each check, it remitted to the Trust Company eighteen checks aggregating $12,-199.09. As has been shown, the contract between Lion and Stevens provided that Stevens should remit to the bank 60% of the checks received. Stevens, because of an error in computation, did not send the full 60%, and upon its attention being called to that fact, on April 21, 1941, four days after the involuntary petition was filed, it sent to the Trust Company its further check for $3,364.68, for the difference between 60% of the amount received by it and what had been previously transmitted to the Trust Company.

It is now claimed by the trustee in bankruptcy that $2,101 of that sum should be paid by the Trust Company to him because the assignment of November 28, 1940, insofar as it attempted to assign moneys to grow due thereafter, was invalid; and because the Trust Company has retained the sum mentioned, its general claim filed cannot be allowed under Section 57, sub. g, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. g, until it has given up the payments mentioned.

The sole question to be determined is whether the assignment by Lion to the Trust Company on November 28, 1940, effectually passed title to $3,364.68 paid after the petition had been filed. It is now conceded that as to $1,263.68 of that sum, which was the amount of the deficiency non-payment on the date of the assignment, such payment was valid. As to the payment of the balance of $2,101, the trustee contends that the agreement to assign money to grow due does not become effective when the money comes into existence, but in order to perfect the assignment, possession of the moneys must be obtained or there must be another assignment in praesenti and that neither of these events occurred prior to the involuntary petition.

The trustee calls attention to the fact that under the agreement of August 7, 1940, Stevens agreed to remit the 60% to Lion, and argues that, therefore, that portion of money was always the latter's property.

There is no proof that Lion was insolvent at any time prior to the filing of the petition. It appears, without contradiction, that between November 28, 1940, the date of the assignment, and April 17, 1941, when the petition was filed, Lion was at all times indebted to the Trust Company in excess of $5,000, and even at the latter date owed $5,435.32, the amount of the general claim filed by the Trust Company, for loans and advances theretofore made. It also appears that after the assignment to it, the Trust Company made further loans and advances to Lion in carrying out the plan of financing its operations, all of which were secured by the assignment in question, as well as by the collateral loan agreement referred to.

As to the claim of the trustee that at all times after the agreement with Stevens of August 7, 1940, Lion owned the 60%, it is obvious that he has overlooked

the effect of the assignment on November 28, 1940, as well as of the letter from Lion to the Trust Company on September 11, 1940. That assignment and letter clearly modified any clause in the previous Stevens agreement by which the 60% was to be remitted to Lion. Thereafter, those moneys belonged to the bank and were to be used in reduction of loans then due and thereafter made. The 60% collected by Stevens from that time on was never actually or constructively in the possession of Lion. So much thereof as by mistake was not remitted to the Trust Company was in the possession of Stevens as trustee or agent for the bank, which at all times had the right to demand and receive payment thereof. Union Trust Co. v. Townshend, 4 Cir., 101 F.2d 903, 908, 914, certiorari denied 307 U.S. 646, 59 S.Ct. 1044, 83 L.Ed. 1526. Hinkle Iron Co. v. Kohn, 229 N.Y. 179-183, 128 N.E. 113. After that assignment, the only obligation owing by Stevens with reference to the 60% was to remit it to the bank, which had the right to appropriate it for the payment of Lion's obligations to it, and for which its loans then and thereafter made constituted a present and continuing consideration. As was said in Union Trust Co. v. Townshend, at pages 911 and 912 of 101 F.2d:

"The reason at the basis of the rule that a mere agreement to pay a debt out of a fund creates no lien on the fund, is that, where there is no appropriation of a part of the fund to the payment of the debt, the whole remains under the unfettered dominion of the debtor, and the failure on his part to carry out the agreement is a mere breach of contract, no different in character from his failure to pay the debt. Lone Star Cement Corp. v. Swartwout, supra [4 Cir., 93 F.2d 767]; Benedict v. Ratner, 268 U.S. 353, 364, 45 S. Ct. 566, 69 L.Ed. 991. This is not true, however, of an agreement that a fund in the possession of another, or to come into his possession, shall be charged with the payment, where the person having possession, or to come into possession, agrees to respect the charge and make payment from the fund when received. Arnold v. Buckhannon Bank, supra [116 W.Va. 589, 183 S.E. 52]. In such case the fund, when it arises, is no longer under the unfettered dominion of the debtor, but is subject to the control of another who has assumed an obligation with respect thereto; and equity enforces a lien thereon in application of the principle that it regards as done that which should have been done.

\* \* \* \* \*

"If bankruptcy had not intervened, therefore, we think there can be no question but that upon receipt by Gohen of the bonds derived from the sale of the property, same would have been impressed with an equitable lien in favor of the bank. Does the fact that bankruptcy proceedings were instituted five days after his receipt of the bonds change the situation? We do not think that it does, for the reason that the lien arose pursuant to an agreement entered into more than four months prior to the institution of the proceedings although the property to which it attached did not come into the possession of Gohen so as to be subject thereto until within the four months period."

That the money was paid after bankruptcy intervened, as shown above, does not affect the result. The transfer of title and possession had been accomplished pursuant to an agreement made more than four months prior to the bankruptcy. The moneys were properly payable to the Trust Company and the advances and loans made furnished a present consideration for the application of the lien or claim of the Trust Company. Okin v. Isaac Goldman Co., 2 Cir., 79 F.2d 317. Union Trust Co. v. Townshend, supra, 101 F.2d at page 912; United States F. & G. Co. v. Sweeney, 8 Cir., 80 F.2d 235-239; Capolino v. Bank of Sicily Trust Co., 163 Misc. 75, 296 N.Y.S. 300.

When the Trust Company received payment, it only received something the right to which had been granted long before the bankruptcy, and in good faith, and in addition, something which had not been in the possession nor under the domination or control of the bankrupt long before bankruptcy intervened. The moneys paid to the Trust Company were not in custodia legis, as argued by the trustee, and he had no right to them. The right to the possession of them was clearly in the Trust Company. Sexton v. Kessler & Co., 225 U.S. 90, 32 S.Ct. 657, 56 L.Ed. 995; Irving Trust Co. v. B. Lindner & Bro., 264 N.Y. 165-171, 190 N.E. 332; Parshall v. Eggert, 54 N.Y. 18. It was not necessary that a new assignment be taken. Okin v. Isaac Goldman Co., supra, at page 320.

The petition for the review is, therefore, denied and the order of the referee confirmed.