In re **FREDERICK SPEIER FOOTWEAR CORPORATION, Bankrupt.**

**Civ. A. No. 26278.**

United States District Court,
D. Connecticut.
March 17, 1955.

Charles Weingarten, Bridgeport, Conn., for petitioner.

Arthur B. Weiss, of Saltman, Weiss & Connors, Bridgeport, Conn., for respondent.

ANDERSON, District Judge.

In December, 1950, a shoe manufacturer, Frederick Speier Footwear Company, predecessor of the bankrupt, entered into a contract with William Iselin and Company, Inc. (hereinafter called Iselin) whereby Iselin agreed to purchase the accounts receivable of the Footwear Company with the understanding that Iselin would bear any loss on any account receivable resulting from the financial inability of a customer of the Footwear Company to pay but that Iselin would not be responsible for non-payment by any such customer of its account resulting from any other cause, such as defective merchandise.

In March, 1951, the Footwear Company was incorporated as the Frederick Speier Footwear Corporation, now the bankrupt, and succeeded to all the rights and duties of the Footwear Company in the contract with Iselin.

In 1953 an additional agreement was entered into in writing for a line of credit extended to the bankrupt by Iselin under the terms of which the bankrupt's materials, work in process and merchandise were subjected to a factor's lien by Iselin, not only to secure the new line of credit, but also to secure all obligations and indebtedness owed from time to time to Iselin by the bankrupt, however arising, including all obligations and indebtedness of the bankrupt to Iselin which arose under the provisions of the contract relative to Iselin's purchase of accounts receivable.

Thereafter Iselin complied with statutory requirements to perfect its factor's lien and filed in the appropriate town clerk's office a notice of lien which was dated June 1, 1953, and recited that Iselin had and claimed a continuing lien on the raw materials, work in process and finished goods of the bankrupt as security for all loans and advances made and to be made to the bankrupt and as security for "the payment of interest thereon, commissions, obligations, indebtedness, charges, and expenses properly chargeable against or due from" the bankrupt to Iselin.

After filing of the notice of this factor's lien, Iselin made loans and advances to the bankrupt under the line of credit and also continued to purchase accounts receivable from the bankrupt. Iselin did not keep separate records as to the running balances between it and the bankrupt with respect to the purchase of accounts receivable and the loans and advances but it maintained a single running account which reflected the debits and credits arising out of the purchase of accounts receivable, the chargeback of accounts by Iselin to the bankrupt where the accounts proved uncollectible for reasons other than the financial ability of the customer to pay, and the loans and advances made under the line of credit.

The bankruptcy proceedings were commenced by an involuntary petition filed on May 13, 1954.

By the end of April, 1954, the bankrupt was indebted to Iselin in the amount of $2,959.67 which the trustee in bank-

ruptcy admits is secured by the factor's lien on materials and goods.

By November, 1954, the bankrupt was indebted to Iselin in the amount of $17,-880.48, the most substantial part of the increase in indebtedness being due to Iselin's charge-back to the bankrupt of accounts receivable previously purchased by it which had proven to be uncollectible because the merchandise sold by the bankrupt which produced these accounts was rejected by the buyers due to defective manufacture and similar reasons.

The Referee ruled in favor of Iselin and the trustee has filed a petition for review, presenting here the single question of whether or not Iselin is a secured creditor, as one having a factor's lien on the raw materials, work in process and finished goods in the hands of the trustee for the total sums charged back to the Footwear Corporation for defective merchandise rejected by its customers on accounts receivable which had been financed by Iselin or is, to the extent of those sums, simply a general creditor.

The sections of the General Statutes of the State of Connecticut dealing with liens of factors on merchandise are Sections 7256 to 7264 inclusive. The term "merchandise" or "goods" is defined to mean "materials in the raw state, goods in process of manufacture and finished goods intended for sale, but shall not include machinery, equipment or trade fixtures of the borrower; the term 'factor' shall mean any person, firm, bank or corporation, and its successors in interest, which advances money under the provisions of said sections on the security of goods or merchandise, whether or not it is employed to sell such goods or merchandise; the term 'borrower' shall mean the owner of the merchandise or goods or his agent, who borrows from, and as security therefor creates a lien, as provided in section 7257, in favor of, a factor."

Section 7257 provides as follows:

"Any factor shall have a continuing lien upon all such goods and merchandise in the custody or possession of the borrower as are from time to time designated in a writing dated and signed by the borrower and delivered to the factor and reciting that a lien upon the designated goods and merchandise has passed to the factor, which lien shall secure the factor for all loans and advances to, or for the account of, the borrower, together with interest thereon, and for the commissions, obligations, indebtedness, charges and expenses properly chargeable against or due from such borrower and for the amounts due or owing upon any notes or any obligations given to or received by the factor for or upon account of any such advances, interest, commissions, obligations, indebtedness, charges and expenses."

The petitioner contends that the provisions of the statutes do not permit the inclusion of the borrower's contingent liability on the sale of its accounts receivable as something to be secured by the factor's lien even though this is agreed upon by the borrower and factor. He asserts that the statutes allow a lien only for loans and advances against the security of the inventory; and that the words "obligations" and "indebtedness" in Section 7257 refer only to matters arising directly out of or connected with the inventory or the care and preservation of it.

While this interpretation of the statutes is consistent with the basic concept of a factor or commission merchant as one who is entrusted with the possession of the goods of his principal for the purpose of selling them, it leaves out of consideration the changes in functions of a factor during the past half century. At present he is as much a banker as a commission merchant, but a banker concerned with the special financing required in the manufacture and merchandising of a particular kind of goods. The financing of accounts receivable and the extension of lines of credit by factors, of which the present case is an example, provides a tremendous

source of necessary working capital for manufacturers of various kinds of goods. This modern function of factors grew in response to the needs of commerce in a field so specialized that the needs could not or were not adequately provided for by ordinary lending institutions. Factors now perform this without selling the goods or having possession of them. The purpose of the Connecticut Statutes was to foster this growth in function. It must provide security in the absence of actual possession of the goods by the factor. Where, as in this case, the agreement between the borrower and the factor includes within the security of the lien, the contingent liability of any charge-backs arising out of the accounts receivable contract, such inclusion is permitted and is enforceable under Section 7257. All of the formal statutory requirements as to filing and posting of notice were complied with. Any third person dealing with the borrower was put upon inquiry as to the amount of credit extended by the factor, and although the statute makes no specific mention of it, there is a duty in the factor to disclose the borrower's indebtedness to it upon such inquiry. Section 7260 describes classes of creditors as to which the factor's lien has precedence and those over which it does not have precedence. While it is true that unsecured creditors on June 1, 1953, the effective date of the lien, suffered some disadvantage as to accounts receivable then outstanding and contingent liability on which was then brought under the protection of the lien, such creditors were in no different position than they would have been if the borrower had arranged for a collateral loan at a bank and had pledged stocks or bonds or other assets to cover a current loan and also a past unsecured obligation at the bank—a transaction which is very common. Such disadvantage to the unsecured creditors must be balanced against the desirability of inducing the factor to advance fresh capital, which may be needed to keep a business going, but which he will not advance unless he can place under the security of the lien the borrower's preexisting and outstanding indebtedness to the factor. The petitioner objects that this opens the door to using the factor's lien to secure all sorts of debts such as breaches of warranty, torts and personal expenditures of the borrower, unrelated to his business. Whether the statute could be construed to be so all encompassing, it is not necessary here to decide. It is construed, however, to permit lien security for debts and obligations arising from transactions which are related to the general course of the borrower's business and which are included in the agreement between the factor and the borrower. These include, in this case, the contingent liability of the charge-backs under the accounts receivable agreement between the borrower and the factor whether the receivables came into existence before or after the filing date of the lien. The order of the Referee is affirmed and the petition is dismissed.