In the Matter of Samuel FREEMAN, Individually and Trading as Pedi-Tred Shoes, Bankrupt,
International Shoe Company, Appellant.
No. 13517.

United States Court of Appeals
Third Circuit.
Argued May 4, 1961.
Decided July 25, 1961.

Martin L. Duyk, Newark, N. J. (Furst, Furst & Feldman, by George Furst, Newark, N. J., on the brief), for appellant.

James E. Masterson, Newark, N. J. (Kleinberg, Moroney & Masterson, Newark, N. J., on the brief), for respondent, Meyer Dubow, trustee in bankruptcy.

Before GOODRICH, STALEY and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

International Shoe Company (International) claimed the security of a factor's lien [1] in the bankruptcy of Samuel Free-

man, trading as Pedi-Tred Shoes (the bankrupt). The lien was contested by the trustee. The Referee held the lien void as a secured obligation and the United States District Court for the District of New Jersey affirmed the Referee. This appeal followed.

The parties to the litigation are not in disagreement as to the basic facts. The bankrupt conducted a retail shoe business in Newark, New Jersey. In June 1959 he was indebted to International in the sum of fifteen hundred dollars for previously acquired merchandise. He desired to obtain a larger inventory from International but neither his credit rating nor his business to that date warranted a further extension of credit. International describes the events that followed thus:

"After meetings with International's agent, it was agreed that the bankrupt would be allowed to draw on International for its merchandise up to a maximum amount of Eight Thousand Five Hundred ($8,500.00) Dollars, during a three year period, in return for which International was to be secured by a factor's lien on inventory, proceeds and accounts receivable from the sale thereof during the existence of the lien. This agreement for the factor's lien was entirely separate and apart from the purchases which bankrupt had made on credit previously, of approximately Fifteen Hundred ($1500.00) Dollars. A 'Factor's Lien Agreement' was entered into (J5a–J12a) as provided by the Revised Statutes of New Jersey, 2A:-44–178 et seq. A proper notice of lien (J13a–J14a) as required by R.S. 2A:44–180 was duly filed in the office of the Register of Essex County on August 4, 1959.

"Subsequently, the bankrupt drew on International as provided in the 'Factor's Lien Agreement' (J5a–J12a), for merchandise to the stated

---

[1]. The lien was purportedly authorized under New Jersey Factors' Lien Law, N.J.S.A. 2A:44–178 et seq.

maximum amount of Eight Thousand Five Hundred ($8,500.00) Dollars. In the meantime, his credit purchases remained at approximately Fifteen Hundred ($1500.00) Dollars."

The relevant portion of the factor's lien agreement provides:

"(2) *Amount and Duration of Loan or Credit*—International has presently extended a loan or credit to the Borrower in the amount of approximately Fifteen Hundred Dollars ($1500.) on open account and/or installment notes and, while International shall not be obligated to furnish the Borrower future credit in any specific amount, all such further advances, loans or credits as may be extended by International to the Borrower from time to time in the future during the ensuing three (3) years (if requested by the Borrower), to the maximum amount of Eighty-five Hundred Dollars ($8500.), shall, nevertheless, be subject to the provisions of this agreement and secured by the factor's lien herein created. * * *"[2]

On June 28, 1960, the bankrupt filed a voluntary petition in bankruptcy. A receiver was appointed on June 28, 1960. Upon his application, returnable July 25, 1960, an order, consented to by International, was made by the Referee for a public sale of the bankrupt's assets free and clear of encumbrances, but providing that the lien of International, if valid, was to be transferred to the proceeds of the sale. The merchandise brought $5,-997.60.

After the public sale the respondent trustee presented further legal argument as to the validity of International's lien and the Referee, on September 14, 1960, entered an order declaring the lien invalid because "the Factor's Lien Act of the State of New Jersey was applicable only to loans and advances of money and not to the extension of credit for goods and merchandise. * * *"

The Factors' Lien Act of the State of New Jersey (Act) N.J.S.A. 2A:44–178 et seq. was adopted in 1942. Laws, 1942, c. 182. It defines a factor in the following language:

"The terms 'factor' and 'factors' wherever used in this article include persons, firms, and corporations, and their successors in interest, engaged in the business of factoring or financing sales of merchandise or of purchasing or lending on the security of receivables arising out of such sales who as part of or incidental to such business lend upon the security of merchandise, and any consignee or consignees, pledgee or pledgees, who advance money on goods consigned to or pledged with

---

2. The agreement also contained the following provision:

"(3) *Factor's Lien*—The Borrower agrees to and hereby does confer upon and grant to International a continuing general lien upon all of its inventory of footwear, purses, hosiery and other merchandise, and the accounts receivable or other identifiable proceeds resulting from the sale or other disposition thereof, whether now in existence and whether now owned or hereafter acquired by the Borrower and in furtherance thereof does hereby grant to International the immediate right of possession of all of said articles. International's continuing lien shall apply and attach to said inventory simultaneously with the acquisition thereof by the Borrower and no future delivery, assignment, pledge or transfer of said merchandise shall be necessary to bring the lien into effect. It is understood and agreed that all International products sold and delivered by International to the Borrower are subject to said factor's lien and that to the extent, if any, necessary, International retains so much of the title to said merchandise as will subject them to said factor's lien at the moment of their acquisition by the Borrower. The factor's lien hereby created shall be security for all of International's loans, advances, or credits to or for the account of the Borrower together with interest thereon and all charges and expenses properly chargeable against or due from the Borrower, as well as for the due performance and observance of all covenants and obligations and conditions imposed upon the Borrower by the terms of this agreement or made pursuant hereto."

them, whether or not such consignee or pledgees are employed to sell such goods, and their successors in interest." N.J.S.A. 2A:44–178.

It further provides:

"If so provided by any written agreement all factors shall have a continuing general lien upon all goods and merchandise from time to time consigned to or pledged with them, whether or not in their constructive, actual or exclusive occupancy or possession, and upon any accounts receivable or other proceeds resulting from the sale or other disposition of such goods and merchandise, for all their loans and advances to or for the account of the person creating the lien (hereinafter called the borrower), * * *." N.J.S.A. 2A:44–179.

International contends that:

" * * * the statutory factor is one who is, among other things, 'financing sales of merchandise' and is in no way prevented by the Act from financing the sale of his own merchandise. The phrase 'advance money' which was found to be a prerequisite to the acquisition of the statutory lien in the proceedings below * * * appears only in the latter part of this definitional section quoted above. [N.J.S.A. 2A:44–178]."

It further contends that the word "advances" as used in N.J.S.A. 2A:44–179 should not be restricted to money but should be interpreted as credit advanced for merchandise as in this case and that in N.J.S.A. 2A:44–185 liberal construc-

tion is called for "to secure the beneficial interests and purposes thereof."

■■ At the common law a factor was an agent employed to sell goods for a principal and receive a commission thereon. The factor had a lien on the goods for any advances made by him and for his commissions. The common law factor's lien was founded on the possession of the goods of his principal and served the function of securing him for the advances owed by the principal. In re Tele-Tone Radio Corp., D.C.D.N.J.1955, 133 F.Supp. 739; 4 Collier, Bankruptcy § 70.77 (14 ed. 1942); Skilton, The Factor's Lien on Merchandise, 1955 Wis.L. Rev. 356, 367.

The modern factor, however, is a financier who generally lends monies and takes in return an assignment of accounts receivable or some other security. He is not a selling agent. In re Tele-Tone Radio Corp., supra; 4 Collier, op. cit. supra. It is the modern factor who is the primary beneficiary of the factors' lien statutes of the various states. They were enacted to foster his growth and function. Those statutes authorize a floating lien on inventory giving the modern factor a lien without the necessity of taking and maintaining possession of the pledged property. In re Frederick Speier Footwear Corp., D.C. D.Conn.1955, 129 F.Supp. 434; Ogline, The Factor's Lien Act as a Method of Inventory Financing, 4 W.Res.L.Rev. 336, 339 (1953).

The legislative history of the New Jersey Act discloses that it originated in Senate Bill No. 65, February 9, 1942. As introduced it read, in the part pertinent here, as provided in the margin.[3] Chang-

**3.** As introduced the relevant parts of original Senate Bill No. 65 read as follows: "1. The terms 'factor' and 'factors' wherever used in this act include any consignee or consignees, pledgee or pledgees, who advance money on goods consigned to or pledged with them, whether or not such consignee or pledgees are employed to sell such goods, and their successors in interest.

"2. If so provided by any written agreement with their principals, consignors, pledgors or employers (hereinafter called the person creating the lien) all factors, consignees and commission merchants shall have a continuing general lien upon all goods and merchandise from time to time consigned to or pledged with them, whether in their constructive, actual or exclusive occupancy or possession

es were made before the bill was adopted into law. The principal one involved the section defining the term "factor". After the opening words—"The terms 'factor' and 'factors' wherever used in this article include"—there was added the following clause:

"persons, firms, and corporations, and their successors in interest, engaged in the business of factoring or financing sales of merchandise or of purchasing or lending on the security of receivables arising out of such sales who as part of or incidental to such business lend upon the security of merchandise, and".

In introducing the original bill its sponsor accompanied it by a statement which read:

"The purpose of this bill is to amend the lien law of New Jersey so as to give factors and other persons who advance money against goods a lien to protect the same and is similar to provisions contained in the lien laws of New York and a number of other States."

The definition of "factor" under the New York law is as follows:

"The terms 'factor' and 'factors' wherever used in this section include any consignee or consignees, pledgee

or pledgees, who advance money on goods consigned to and/or pledged with them, whether or not such consignees or pledgees are employed to sell such goods and their successors in interest." McKinney's Consol. Laws, New York Personal Property Law, c. 41, § 45.

This language was identical with the bill as introduced. As we have seen the term "factor" was defined by additional language in the New Jersey Act as adopted, but it still did not encompass the seller of merchandise on credit as contended by International.[4]

The Wisconsin Factors' Lien Act describes the eligible lender as being one who is engaged "in whole or in part in the business of lending or advancing money on the security of merchandise." Wis.Stats. (1951) § 241.145. This is a variation from the language of the New Jersey Act, but the difference is insignificant because both statutes are for the protection of a group of financiers who lend or advance money.[5]

In discussing the Wisconsin statute Professor Charles Bunn cogently commented:

"The Act follows a pattern which has become familiar in the law of a number of states. Its evident pur-

---

or not and upon any accounts receivable or other proceeds resulting from the sale or other disposition of such goods and merchandise, for all their loans and advances to or for the account of the person creating the lien, * * *"

4. In the article by Professor Robert H. Skilton, The Factor's Lien on Merchandise, 1955 Wis.L.Rev. 356, 384, 385, it is said:
   "The statutes, inspired by the New York Act, are variations upon a common theme —a lender's lien upon existing and after-acquired merchandise, to secure present and future advances—a 'continuing general lien.' Many of the statutes are highly individualized. * * *"

   *       *       *       *       *

   "The kind of lenders who may qualify under the acts varies. They may be, in some versions, any lenders 'who advance money on the security of merchandise'— a broad definition, which includes natural persons, banks, apparently anyone, provided the security of the loan is mer-

chandise. Under another definition, the lender must be 'engaged in the business of factoring or financing sales of merchandise, or of purchasing or lending on the security of receivables arising out of such sales who as part of or incidental to such business lend upon the security of merchandise.' [Identical language in the New Jersey Act] (Is this an attempt to keep the preserve for the specialists, possibly to exclude most commercial banks?) * * *"

5. In two law review articles the significant differences in the various factors' lien acts are set forth. Silverman, Factoring: Its Legal Aspects and Economic Justification, 13 Law & Cont.Problems, 593, 602, 603 (1948); Skilton, The Factor's Lien on Merchandise, 1955 Wis.L.Rev. 356 (appendix to part 1). The New Jersey Act is compared in both articles. However, in neither is it indicated that any of the acts grant a lien to a seller of merchandise.

pose is to make general liens on fluctuating stocks of merchandise secure and this it does, as fully as a State law can, in favor of some people. The strange thing is that the people who can take advantage of it are so limited. They consist of 'any person * * * engaged in whole or in part in the business of lending or advancing money on the security of merchandise whether or not they are employed to sell such merchandise.' This includes banks, finance companies and old-fashioned factors who make advances to their clients, but *excludes sellers of merchandise,* or of the business itself (as in the case with which this paper started) and persons who make an occasional loan but are not in the business of lending. To all such persons the general lien of the Act is denied and they are left to the rigors of the prior law." (Emphasis supplied and footnotes omitted.) Financing Dealers: Existing Wisconsin Law and the Uniform Code, 37 Marquette L. Rev. 197, 200 (Winter 1953–54).

■ No case has been cited to us nor have we found one in which a seller of his own merchandise has obtained a lien under a factor's lien statute. The cases reveal that where a lien has been obtained under such statutes the factor was an independent financing agency that had loaned or advanced money to a borrower.[6] Neither is there reason to believe that the courts of New Jersey would extend the umbrella of its factors' lien law to the transaction involved in this case.

In the instant case International was neither a common law nor a modern factor. It was not a factor as that term is defined in N.J.S.A. 2A:44–178. It was not a corporation engaged in the business of factoring or financing sales of merchandise or of purchasing or lending on the security of receivables arising out of such sales which, as part or incidental to such business, loaned upon the security of such merchandise.[7] Nor was it a consignee or pledgee who advanced money on goods consigned or pledged with it. Here it was engaged in the business of selling shoes on credit. To hold that International had a lien under the Act obviously would be contrary to the purpose of the Act which was to facilitate financing agencies in making loans and advances of money on the security of goods not in their possession.

International submits many definitions of the terms "loans" and "advances" to support its position that in *advancing credit* to the bankrupt under the circumstances of this case it brought itself within the purview of the Act. It suggests that if it had given the bankrupt its check for $8500 and he had endorsed it back to it "in payment of the credit or indebtedness involved" it would be a compliance with the Act. It concedes that such an exercise would be a technical and meaningless compliance. It would be meaningless, indeed, and not a compliance.

6. See, e. g., Meinhard, Greeff & Co. v. Edens, 4 Cir., 1951, 189 F.2d 792; Manchester Nat. Bank v. Roche, 1 Cir., 1951, 186 F.2d 827; Bloch v. Mill Factors Corporation, 2 Cir., 1941, 119 F.2d 536, 134 A.L.R. 1188; Irving Trust Co. v. Commercial Factors Corp., 2 Cir., 1934, 68 F.2d 864; In re Bernard & Katz, Inc., 2 Cir., 1930, 38 F.2d 40; In re Cut Rate Furniture Co., D.C.N.D.N.Y.1958, 163 F. Supp. 360; In re Tele-Tone Radio Corp., D.C.D.N.J.1955, 133 F.Supp. 739; In re Frederick Speier Footwear Corp., D.C. D.Conn.1955, 129 F.Supp. 434; In re Comet Textile Co., D.C.S.D.N.Y.1936, 15 F.Supp. 963, affirmed 2 Cir., 1937, 91 F. 2d 1008; Irving Trust Co. v. B. Lindner & Bro., Inc., 1934, 264 N.Y. 165, 190 N.E. 332; Bloch Bros. Paper Co. v. Efficient Direct Mail Serv., Mun.Ct.1950, 198 Misc. 669, 102 N.Y.S.2d 1003.

7. The parties stipulated that the corporate charter of International empowered it to " * * * engage in intra and inter-state business, and to do these things either as principals, or as agents, factors, brokers, consignees, trustees or otherwise. * * * " However, there was no showing made in this case that International acted other than as a seller of merchandise on credit.

It likewise suggests that its situation is the same as that which would arise were a bank to set aside a sum to be drawn against for purchases in return for the statutory lien. The difficulty is that its analogy is overdrawn. The agreement in this case provided that International was not obligated to furnish the bankrupt with any specific amount of credit but that if it did, such credit would be secured up to a maximum of $8500 by the so called factor's lien purportedly created by the agreement. The analogy also fails in that the bank would not be, as International was here, the seller of merchandise.

◼ The word "advance" as used in N.J.S.A. 2A:44–179 refers to an advance of money. This is made clear when the above noted section and N.J.S.A. 2A:44–178 are viewed together. N.J.S.A. 2A:44–178 defines the term factor. The first class of factors there defined "lend[s] upon the security of merchandise" while the other class "advance[s] money on goods consigned to or pledged with them." N.J.S.A. 2A:44–179 grants a lien to all factors for "all their loans and advances." It would thus appear that N.J.S.A. 2A:44–179 grants a lien to those factors who lend upon the security of merchandise for all their loans and grants a lien to all those factors who "advance money on goods consigned to or pledged with them" for all their advances. In both instances, however, "loans and advances" refer to money. Cf. People ex rel. James Talcott, Inc. v. Goldfogle, 1925, 213 App.Div. 719, 211 N.Y.S. 122.

Moreover the use of the term "borrower" in N.J.S.A. 2A:44–179 to describe the person who creates the lien fortifies the proposition that the framers of the law had in mind a lien to protect a loan or advance in terms of money. It is difficult to conceive of the bankrupt as a "borrower" of the merchandise in question notwithstanding the same term was carried over into the purported lien agreement between him and International.

That the Act recognizes the relationship of "borrower" and "lender" is supported in Taylor v. New Line Industries, Ch.Div.1955, 37 N.J.Super. 501, 117 A.2d 643, 644 where Justice Haneman of the New Jersey Supreme Court (then Judge Haneman) said: "The Factor's Lien Law, when adopted, provided a new type of security for the *lender*." (Emphasis supplied.) And in In re Tele-Tone Radio Corp., supra, it was said: "The modern factor, however, is, as here, a financier who lends money and takes in return an assignment of the accounts receivable or some other security." 133 F.Supp. at pages 746, 747.

International contends that the small business community would benefit from a construction of the Act which would hold its lien valid, since such an interpretation would provide an expanded source of credit.[8] This may be true but that is a task for the Legislature of the State of New Jersey and not for the courts.

◼ International finally contends that the trustee is not in a position to attack the validity of its lien since there is no evidence that any creditor had extended credit to the bankrupt prior to August 4, 1949, the date of the filing by International of the statutory notice of

8. Under the broad provisions of the Uniform Commercial Code the desideratum for which it contends may be accomplished. Bunn, Financing Dealers: Existing Wisconsin Law and the Uniform Code, 37 Marquette L.Rev. 197, 202 (Winter 1953–54). That Code has now been adopted in Pennsylvania, Massachusetts, Kentucky, Connecticut, New Hampshire, Rhode Island, Wyoming, Arkansas, New Mexico, Ohio and Oregon. Report of William A. Schnader, Chairman, Commercial Code Committee of the National Conference of Commissioners on Uniform State Laws to the Annual Meeting of the American Law Institute, May 17, 1961. The New Jersey Assembly passed the Uniform Commercial Code on May 31, 1961, but it is not yet the law of that State. Professor Clarence C. Ferguson, Jr. wrote the introduction and comments on Article 9, Secured Transactions, Second Report of the New Jersey Commission to Study and Report upon the Uniform Commercial Code. In it he notes that the present New Jersey Factors' Lien Act would be displaced by the Code.

lien, who was a creditor at the time of the filing of the bankruptcy petition. It cites Lewis v. Manufacturers Nat. Bank, 1961, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 in support of the point. That contention is patently without merit. The Lewis case is not apposite. The trustee acquired his status as a lien creditor in the instant case at the time the petition in bankruptcy was filed, and the alleged factor's lien on which International depends was invalid at that time as against the trustee. 11 U.S.C.A. § 110, sub. c.

The order of the District Court will be affirmed.