THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES TALCOTT, INC., Respondent, v. HENRY M. GOLDFOGLE and Others, as Commissioners of Taxes and Assessments of the City of New York, Appellants. (Moneyed Capital Taxes of 1923.)

First Department, July 6, 1925.

**Taxation — tax on moneyed capital coming into competition with business of National banks — relator is engaged in business as factor and commission merchant selling and financing for textile mills and agents — invested capital does not come into competition with business of National banks.**

The capital of the relator, which is engaged in the business of factor and commission merchant, selling and financing for textile mills and agents, does not come into competition with the business of National banks and cannot be taxed on that basis.

APPEAL by the defendants, Henry M. Goldfogle and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 17th day of December, 1924, in certiorari proceedings brought to review assessments on property of the relator, under the Laws of 1923, chapter 897, amending the Tax Law and known as the Moneyed Capital Tax Law, directing that the assessment of $1,000,000 made by the defendants for the purposes of taxation for the year 1923, against the relator on the value of moneyed capital owned or held by the relator coming into competition with the business of National banks, be vacated and canceled.

The opinion of the Special Term is reported sub nom. *People ex rel. Broderick* v. *Goldfogle* (123 Misc. 399).

*George P. Nicholson, Corporation Counsel [William H. King* of counsel; *Eugene Fay* with him on the brief], for the appellants.

*Hughes, Rounds, Schurman & Dwight [Arthur C. Rounds* of counsel; *George W. Schurman* and *Bertram F. Willcox* with him on the brief], for the respondent.

DOWLING, J.:

The relator is a domestic corporation organized under the Business Corporations Law, having its office and place of business at 225 Fourth avenue, New York city, and the only business which it transacted was that of factor and commission merchant, selling and financing for textile mills and agents, using all of its capital in such business.

The business transacted by relator, according to the stipulated facts, comes within one of the three following classes:

1. Where a business relationship exists between relator, as factor, and the selling agent and manufacturer.

Selling agents of manufacturers make arrangements with relator whereby relator undertakes to render certain services and make certain advances to manufacturers in connection with the consignment and sale of goods produced by the manufacturer whom the sales agent represents.

The manufacturer consigns merchandise to relator which receives physical possession of the goods so consigned either in relator's own premises on Fourth avenue or in premises leased by it.

Upon receipt of this merchandise and pending the sale thereof and the realization of the proceeds from such sale, relator makes advances, when requested, to the manufacturers, its consignors, in accordance with its contracts, against the merchandise received. When the selling agents negotiate sales of the merchandise, such sales can be made only subject to approval by the relator. If the relator approves of the sale, it then guarantees the credit of the purchaser and the merchandise theretofore held by relator is, to the extent of such respective sale, by it released and is delivered by the relator, either to the purchaser or to a carrier for transmission to the purchaser.

At the end of each month the manufacturer's account is credited with the net proceeds from sales negotiated during the month and at the same time that this credit is entered, relator debits the manufacturer's account with interest at the rate of six per cent per annum on the net sales prices from the date of the crediting thereof to the due date of the various accounts.

For the services of James Talcott, Inc., in this connection a certain commission is charged the manufacturer, which commission is based on the net sales credited to the manufacturer. This commission includes the following services:

(a) The services of relator's trained and experienced credit department in giving information as to credit, etc.; (b) service of the selling agent in negotiating sales (the selling agent receives from James Talcott, Inc., for his compensation a portion of the commission charged by relator to the manufacturer for its services); (c) storage space either in relator's premises on Fourth avenue or in premises leased by relator; (d) cartage by relator of the merchandise to the purchaser or to the carrier for conveyance to the purchaser; (e) a guaranty of the credit of the purchaser who buys the goods; (f) the right of the owner to request and receive from relator advances in accordance with the contracts; (g) the services of a watchman on the premises who remains there until close of business; (h) the ledgering of the accounts existing between the purchaser

of the goods and the manufacturer thereof (the bills are sent out by the selling agent on stationery provided by relator which stationery bears relator's name and has thereon a statement to the effect that the account is owned by and payable only to James Talcott, Inc.); (i) the collection of the accounts due for sales when and as the same mature; (j) the obtaining of insurance against fire and sprinkler leakage while the merchandise is in the possession of relator and against burglary, theft, pilferage and fire while the same is in the possession of the truckmen whom relator employs; (k) when the merchandise consigned is silk in the grey, James Talcott, Inc., arranges for the finishing and dyeing of these grey goods.

The following charges are also made which are not included in relator's commission and are in addition thereto:

(a) Interest at the rate of six per cent per annum on the money advanced by relator to the manufacturer, in accordance with its contracts, against goods consigned to it; (b) interest at the rate of six per cent per annum on the net sales price of merchandise from the date of the crediting thereof to the due date of the particular account; (c) premiums paid by James Talcott, Inc., for insurance obtained by it; (d) where grey goods are finished and dyed pursuant to arrangement made by relator, the actual cost of such finishing and dyeing.

2. Where the relationship exists only between the owners, or manufacturers, of merchandise and the relator, as factor.

A. Owners, or manufacturers, of merchandise consigned same to relator. Such merchandise comes either into the physical possession of relator in relator's premises on Fourth avenue or is stored in premises leased by relator which premises, and goods so stored, are under the supervision of a representative of relator. The owner of the goods negotiates the sale thereof which sale is subject to relator's approval. Advances, when requested, are made by relator to the owners or manufacturers in accordance with relator's contracts with them upon receipt of goods and pending the sale thereof and the realization of the proceeds from such sale. The credit of the purchaser is guaranteed by relator and the accounts resulting from the sales are payable to or assigned to the relator. At the end of each month relator credits to its consignor the net amount of the sales made during that month and interest at the rate of six per cent per annum is debited against the consignor from the date of the credit to the due date of the account resulting from the sale.

The commission charged by relator in this connection includes, where the merchandise is stored in relator's premises on Fourth avenue, the following services:

46

(a) The services of relator's trained and experienced credit department in giving information as to credit, etc.; (b) rent of floor space; (c) supervision of merchandise by employee of relator; (d) the right of the owner, or manufacturer, to request and receive from relator advances in accordance with the contracts; (e) the guaranteeing as to credit of the purchaser; (f) the cashing of sales, *i. e.,* the crediting to manufacturer or owner of the net amount of sales made; (g) the ledgering of accounts and supplying manufacturer or owner with appropriate billheads wherewith to bill purchasers; (h) making arrangements for finishing, dyeing and printing goods and payment of the resulting bills; (i) delivery of consigned merchandise to purchaser or to carrier for transmission to purchaser; (j) obtaining of insurance against fire and sprinkler leakage on goods consigned and insurance against burglary, theft, pilferage and fire while the goods are in possession of the truckman obtained by relator.

Where the goods are stored in premises leased by relator, the commission charge includes all of the above and also the salary of relator's representative who is in charge of said premises and of the merchandise there stored.

The following charges are also made which are not included in relator's commission and are in addition thereto:

(a) Interest at the rate of six per cent per annum on money advanced by relator to owners or manufacturers in accordance with its contracts with them against consigned merchandise; (b) interest at the rate of six per cent per annum on the net amount of sales from the date of the crediting thereof to the due date of the account resulting from such sales; (c) premiums paid by relator for insurance obtained by it, the payment of such premiums being reimbursed by the owner or manufacturer; (d) where merchandise is finished and dyed, the cost thereof.

B. Owners, or manufacturers, of merchandise consign the same to relator on the same terms and for the same charges as indicated in A above, with the exception that relator does not guarantee the credit of the purchaser of such merchandise. In this situation the services performed by relator are identical to those above indicated, with the exception that accounts are not guaranteed and that as a rule, the net amount of sales is not credited to the owner or manufacturer until such accounts are actually collected.

3. Where the relationship exists between owners, or manufacturers, and relator but no goods are consigned.

A. Owners, or manufacturers, of merchandise assign to relator accounts resulting from sales theretofore approved by relator. The credit of the purchaser is guaranteed by relator and the manu-

facturer or owner of the merchandise is credited with the net amount of the account when the same is assigned to relator and is charged with interest at the rate of six per cent per annum from the date of such crediting to the due date of the account, and advances, when requested, are made by relator to the owners or manufacturers in accordance with its contracts with them against such accounts and relator assumes the burden of collection of these accounts when due.

A commission is charged by relator in this connection which includes:

(a) The services of relator's trained and experienced credit department in giving information as to credit, etc.; (b) a ledgering of the account between assignor and the purchaser; (c) a billing of the purchaser by relator — the bill is prepared in duplicate by the assignor. The original and duplicate are sent to relator. On the reverse side of the duplicate is an assignment of the account to relator. On the face of the duplicate is a receipt indicating delivery of the merchandise to the purchaser, or delivery thereof to an express company or other carrier for transportation to the purchaser. The original is stamped by relator with a notice to the effect that the account has been assigned to it and is then mailed by relator to the purchaser; (d) collection of accounts; (e) guaranteeing of accounts; (f) the right of the owner, or manufacturer, to request and receive from relator advances in accordance with the contracts.

The following charges are also made which are not included in relator's commission and are in addition thereto:

(a) Interest at six per cent per annum on money advanced against accounts that are assigned; (b) interest at six per cent per annum on accounts credited from the date of such crediting to the maturity date of the account.

B. Owners, or manufacturers, of merchandise assign accounts to relator on the same terms as indicated in A above, with the exception that relator does not guarantee the credit of the purchaser of such merchandise and does not credit the owner or manufacturer with a sale until an account has been collected. In this situation the commission charged by relator includes:

(a) The services of relator's trained and experienced credit department in giving information as to credit, etc.; (b) the ledgering of the account between the manufacturer and purchaser; (c) a billing of the account as above; (d) a collection of the account; (e) a crediting of the proceeds of the account when the same are collected; (f) the right of the owner, or manufacturer, to request and receive from relator advances in accordance with the contracts.

An interest charge is made of six per cent per annum on money

**724** People ex rel. Talcott, Inc., *v.* Goldfogle.

First Department, July, 1925. [Vol. 213

advanced which is additional to and is not included in the above commission.

In all the above classifications, when an advance is made by relator to the manufacturers or owners in accordance with its contracts with them against accounts which have been assigned or against goods which have been consigned, relator is not entitled to and does not claim a right to reimbursement for such advances unless and until upon final liquidation it appears that the proceeds of the goods consigned or accounts assigned are insufficient to repay the advances.

For each of these types of business a different form of contract is used.

Herbert P. Howell, one time vice-president of the National Bank of Commerce of New York, and now vice-president and managing director of Peierls, Buhler & Company, Inc., commission merchants and factors in textiles, testified that National banks never acted as selling agents for merchandise; never made advances upon goods or discounted the accounts receivable resulting from the sale thereof; and that they had a general practice of requiring customers to be completely off their books for a period each year of from sixty days to six months. He also stated that he never heard of a National bank guaranteeing accounts and that as a matter of fact they had no facilities for the storage and display of goods.

In *Gihon* v. *Stenton* (9 N. Y. 476), discussing the nature of a factor's business, the court said (at p. 481): " The object of the consignor is, not to borrow money, but to realize, in advance, some portion of the avails of his property; that of the consignee is, not to make a loan of money for the accommodation of the consignor, or for the sake of the interest, but to increase the profits of his business, which depend upon the amount of consignments he can secure. He frequently knows little or nothing of the personal responsibility of the consignor, and must, of course, rely upon the property as his security. The lien which the law gives him for his advances upon the goods consigned, from the moment of their shipment, and which it protects by the most stringent rules, affords, of itself, some evidence that he is regarded as having made the advance primarily upon the credit of the goods." And again (at p. 482): " It is called an advance. An advance is something which precedes; and, of course, there is something to follow; as applied to the payment of money, the term implies that the parties look forward to a time when the money will be due to the recipient. A debtor who voluntarily pays his debt before it is due, is said to advance it. Can he recover it back? An advance by a factor is a

transaction somewhat similar; it is a prepayment; a mere anticipation of the avails of the goods consigned; and no more creates a debt, in the first instance, than an advancement of a father to his son, in anticipation of his expected inheritance, creates a debt."

The courts have held that the principal is under no personal obligation in the first instance to repay an advance. The difference is that loans are repaid on maturity while advances are not repaid by the party receiving them, but are covered by the proceeds of the consigned goods. This difference is not diminished by the fact that a principal may at times have to reimburse his factor for a deficiency resulting from an over-advance. The primary source of repayment is the consigned goods, and no liability attaches to the consignors to repay the advance until the security of the goods has been exhausted by their sale. The factor does something more than merely loan money. He stores the goods, he sells them, he guarantees the purchasers' credit, he makes advances to his principal, he accounts for his disposition of the merchandise. Sometimes he arranges for the converting of unfinished goods. His advances are incident to his services as factor and are necessary to keep his consignor provided with funds to keep his mill producing fresh goods on which again he can earn his commissions.

This statement of the facts, it seems to me, demonstrates that relator is not engaged in competition with any business of National banks, and that the order appealed from should, therefore, be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.