NATCO CORPORATION, Formerly Na-tional Fireproofing Corporation, Appellant,

v.

UNITED STATES of America.

No. 11992.

United States Court of Appeals Third Circuit.

Argued Nov. 16, 1956.

Decided Dec. 19, 1956.

Julius Ruslander, Pittsburgh, Pa. (Ruslander, Ruslander & Lieber, Greer McIlvain, Pittsburgh, Pa., on the brief), for appellant.

Meyer Rothwacks, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty. Dept. of Justice, Washington, D. C., D. Malcolm Anderson, Jr., U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This is an appeal by a taxpayer from a judgment of the district court denying a refund of taxes alleged to have been erroneously paid. The taxpayer, a Pennsylvania corporation, was reorganized in 1936 under Section 77B of the National Bankruptcy Act, 11 U.S.C.A. § 207, and began business as a reorganized corporation on June 8, 1936. In accordance with the plan of reorganization, it issued to creditors $2,836,400 Sixteen Year 5% Cumulative Convertible Income Debentures. Annually thereafter the corporation accrued the unpaid interest on the

debentures and deducted it as an expense in its federal income tax return. All of the accumulated and current interest was paid in 1948, 1949, and 1950. Its returns filed for those years showed no deduction for payment of the accumulated interest but only for current interest. It is now claimed that the accruals were improper and that the deductions should have been taken only in the years of payment.

The district court found that the accruals and deductions in the years prior to payment had been proper for the reason that the debentures and indenture accompanying them had created a definite and fixed liability of the taxpayer for interest. Appellant contends that its obligation to pay interest was, at most, a conditional one. Of course, if this is so there must be a reversal.

■■■ The controlling legal principles are clear and undisputed. "In the case of a taxpayer on the accrual basis of accounting an item of expense is to be regarded as incurred, and hence deductible as accrued, only in the year when the taxpayer's liability to pay it becomes definite and absolute, whether or not it is presently paid or payable. On the other hand if the liability to pay the item of expense is wholly contingent upon the happening of a subsequent event the item cannot be regarded as incurred or deductible as accrued until the year in which by the occurrence of the event the contingent liability becomes an absolute one." Pierce Estates, Inc., v. Commissioner of Internal Revenue, 3 Cir., 1952, 195 F.2d 475, 477. Though its payment may be deferred, ordinarily interest accrues as expense from day to day unless the obligation to pay at all is contingent upon the happening of a later event. Pierce Estates, Inc., v. Commissioner, supra; Warner Co. v. Commissioner of Internal Revenue, 1948, 11 T.C. 419, affirmed per curiam, 3 Cir., 1950, 181 F.2d 599.

It is necessary to set out the pertinent provisions of the debentures and indenture since they are determinative of the question presented. The debenture reads, in part, as follows:

"United States of America
"Commonwealth of Pennsylvania
"National Fireproofing Corporation
"Sixteen-Year 5% Cumulative Convertible
Income Debentures
"Due May 1, 1952

"National Fireproofing Corporation, a corporation of the Commonwealth of Pennsylvania (hereinafter called the 'Company'), for value received, promises to pay to the registered holder hereof on May 1, 1952,
dollars in any coin or currency of the United States of America which at the time of payment is legal tender for public and private debts, and to pay interest thereon to the registered holder hereof from May 1, 1937 until the principal sum is paid, at the rate of five per centum (5%) per annum, on May 1 and November 1 in each year in like coin or currency, as the same becomes due and payable as hereinafter provided, the principal being payable at the principal office of Commonwealth Trust Company of Pittsburgh (hereinafter called the 'Trustee') in the City of Pittsburgh and Commonwealth of Pennsylvania.

"Payment of said interest semiannually shall constitute a fixed obligation of the Company only beginning on the date of final payment of the principal of and interest upon all First Mortgage Bonds of the Company issued under an Indenture dated as of November 1, 1936, to The Continental Bank and Trust Company of New York, as Trustee, or sooner upon the payment of any dividend upon the capital stock of the Company (such date being for convenience hereinafter referred to as the 'Fixed Obligation Date').

"Accumulated interest from May 1, 1937, to the Fixed Obligation Date shall be paid thereafter from time to time out of the net earnings or earned surplus available for the payment thereof, but at least 50% of the

available net earnings of the Company in any fiscal year after the Fixed Obligation Date shall be applied to such payment of accumulated interest. Net earnings in any fiscal year available for this purpose shall be computed in accordance with proper accounting practice, and shall be the gross income of the Company from all sources after the deduction of (1) all operating expenses and charges, (2) all taxes, (3) proper depreciation and depletion, (4) interest, including interest on these Debentures for the fiscal year. Such available net earnings shall be applied as above provided as soon as practicable after the end of each fiscal year."

The indenture provides:

"Article Four.

"Particular Covenants by the Company.

"The Company covenants to and with the Trustee as hereinafter in this Article set forth:

"Section 1. The Company will duly and punctually pay or cause to be paid the principal and interest of every Debenture at the dates and place and in the manner mentioned in the Debentures according to the true meaning thereof. Payment of interest semi-annually shall constitute a fixed obligation of the Company only on the date of final payment of the principal of and interest upon an issue of First Mortgage Bonds of an authorized issue of $1,-000,000 in principal amount secured by Indenture dated November 1, 1936, to The Continental Bank and Trust Company of New York, Trustee, or sooner upon the payment of any dividend upon the capital stock of the Company (such date being for convenience hereafter referred to as the 'Fixed Obligation Date')."

It further provides:

"Article Seven.

"Remedies of Trustee and Holders of Debentures.

\* \* \* \* \* \*

"Section 6. [After providing for the vesting in the Trustee under the Indenture of the exclusive right to bring suit, this section goes on to provide:] provided, however, that nothing in this section or elsewhere in this Indenture contained shall affect or impair the obligation of the Company which is absolute and unconditional to pay at the date of maturity in the Debentures expressed the principal thereof and interest thereon to the respective holders of the Debentures at the time and place in the Debentures expressed, or affect or impair the right of action which is also absolute and unconditional of such holders to enforce such payment."

The taxpayer urges that the language of the debentures and indenture clearly indicates that the payment of cumulative interest shall constitute a fixed obligation of the debtor beginning only on the date of the final payment of the first mortgage, and, since that date and event were admittedly indefinite and uncertain, the obligation was contingent and it was improper to accrue the interest until that contingency occurred. It appears to us, however, that the debenture itself provides unequivocally for the payment of the principal and interest no later than the maturity date, which was May 1, 1952. This construction is further reinforced by that provision of the indenture wherein the obligation at maturity to pay the interest and principal is spoken of as being "absolute and unconditional" and on that date the holders of the debentures were freed from the restriction imposed upon them by the indenture limiting the right to bring suit to the trustee alone. True enough, the debentures and the indenture both provide that the payment of the interest semi-annually shall constitute a fixed obligation of the company only after the first mortgage bonds had been retired, but it seems clear that the purpose of this restriction was merely to defer the *semi-annual* payment of interest until that

date and not to make the obligation of the company for interest at maturity contingent upon that event. The plan apparently was to protect the first mortgage bonds which were to be paid in full before the *semi-annual* payments to the debenture holders were to commence. After that date, however, payment of the interest to the debenture holders was to be made semi-annually, and the taxpayer no longer had the right to defer those payments. At that time, in addition to the then current interest, the interest cumulated prior to the payment of the first mortgage bonds was to be paid at least to the extent of 50% of the taxpayer's net earnings. There may never have been earnings so that there would be no right to payment of the cumulated interest during those years, but this contingency of payment upon earnings was in turn qualified by the provision both in the debentures and the indenture that payment in all events was to be made both for principal and interest at the rate of 5% from May 1, 1937, on the maturity date which was fixed as May 1, 1952.

The taxpayer maintains that the indenture is silent as to the liability to pay cumulated interest on or after the maturity date of the debentures if that date was prior to the date of payment of the first mortgage bonds. We do not so construe either the language of the debentures or the indenture. The debentures provide that the company is obligated to pay interest until the principal sum is paid, at the rate of 5%, and that the principal sum and interest are due May 1, 1952. This obligation is not contingent upon the payment of the first mortgage bonds. The indenture in turn clearly indicates that this construction is the one intended because, as we have said before, it provides that "nothing in this section or elsewhere in this Indenture contained shall affect or impair the obligation of the Company which is absolute and unconditional to pay at the date of maturity in the Debentures expressed the principal thereof and interest thereon * * *." The language, "at the time * * * in the debentures expressed," refers to the maturity date, May 1, 1952, for if it referred to the conditional semi-annual payments, it would have used the plural "times" and not the singular "time."

The taxpayer relies heavily upon the case of Pierce Estates, Inc., v. Commissioner, supra, decided by this court. That case held, however, that under the provisions of the debentures involved, there was "no fixed or absolute obligation to pay interest either before or at the date of maturity of the principal of the notes." 195 F.2d at page 478. Interest was payable *only out of net income* and then only upon the declaration of the board of directors that certain net income was to be applicable to its payment. Here there is no such contingency.

Another provision there held to be of crucial significance was the redemption clause. The company had the right to redeem the debentures at any time upon the payment of the principal and *declared* interest. "But we think it is determinative of the contingent nature of the taxpayer's liability for interest that its agreement was, upon the retirement of a note, to pay only the unpaid interest which had been *declared*. If the agreement had been to pay all unpaid *accumulated* interest it would have indicated an absolute liability at or before payment of the principal to pay full interest." Pierce Estates, Inc., v. Commissioner, 195 F.2d at page 478 (italics in original). Here the company could redeem at any time but only upon the payment of the principal *and accrued interest to the date of redemption,* together with a premium of 5% of the principal. Likewise upon conversion, the debenture holders were here entitled to receive an additional share of stock for each $20 of *unpaid accrued interest*.

Finally, the conduct of the taxpayer from the date of the issuance of the debentures clearly indicates that it accorded to the debentures and the indenture the interpretation which we have given to them. In addition to accruing and deducting the interest yearly, in 1941

it purchased on the open market debentures having a total face value of $83,-600. The unpaid and accrued interest on them was deducted from the total accrual of interest for the year 1941 on all the outstanding debentures. This adjustment was reflected on the general ledger of the taxpayer and on its federal income tax return filed for the year 1941. The construction against interest by a party to a contract is strong evidence of its meaning. Cutting v. Bryan, 9 Cir., 30 F.2d 754, certiorari denied, 1929, 279 U.S. 860, 49 S.Ct. 418, 73 L.Ed. 1000; 17 C.J.S., Contracts, § 325. See Restatement, Contracts, § 235(e) (1932); Kilby v. Folsom, 3 Cir., 1956, 238 F.2d 699.

For the above reasons, the judgment of the district court will be affirmed.