Stewart H. **HOLBROOK** and Sibyl Holbrook, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. No. 60–277.

United States District Court
D. Oregon.

April 12, 1961.

James D. Tredup (of Koerner, Young, McColloch & Dezendorf), Portland, Or., for plaintiffs.

C. E. Luckey, U. S. Atty., Portland, Or., for defendant.

KILKENNY, District Judge.

Action by plaintiffs to recover income taxes which they allege were erroneously, excessively and illegally assessed by the District Director of Internal Revenue for the District of Oregon for the calendar year 1954.

Plaintiffs duly made and filed with said District Director their joint income tax return for the year 1954, using the cash receipts and disbursements method of reporting. The entire amount of tax for such year was paid along with, or prior to, the filing of such return. Plaintiff Stewart H. Holbrook is an internationally known author. Prior to December 31, 1948, Holbrook began labor on an artistic work entitled "The Age of the Moguls" and about December 5, 1951, he entered into an agreement with Doubleday & Company, Inc. (herein called publisher), as publisher, to complete such work for that company. Said work was completed and delivered to publisher on or shortly after April 21, 1953, and was published during the same year.

Paragraphs 5 [1] and 20 [2] of said agreement are of great importance to a proper

1. "5. The Publisher shall publish the work at its own expense, in such style or styles as it deems advisable, and shall pay to or upon the order of the Author the following royalties on the retail price:

"(a) On all copies of the regular trade edition sold by the Publisher in the United States (except as hereinafter set forth) less returns, but with no deduction for cash discounts or bad debts:

"Ten per cent (10%) on the first 5,-000, Eleven and one-half per cent (11½%) on the next 5,000, and Thirteen and one-half per cent (13½%) thereafter.

"The Publisher agrees to advance to the Author the sum of Six Thousand Dollars ($6,000.00), payable Two Thousand Dollars ($2,000.00) on receipt of this signed agreement; One Thousand Dollars ($1,000.00) on demand after January 1, 1952 and Three Thousand Dollars ($3,000.00) on receipt of complete manuscript, it being understood and agreed that this shall be an advance against the total earnings of the Author under this agreement.

"The Publisher further agrees to pay to the Author the sum of One Thousand Dollars ($1,000.00), payable on demand after January 1, 1952 for editorial expense in connection with the work, to be charged against the Plant Account.

"It is understood and agreed that if the work sells less than seven hundred and fifty copies (750) during any royalty period after the first printing has been sold, royalty on the trade edition in the United States is reverted to Ten Per Cent (10%) effective with the next royalty accounting period."

2. "20. Statements of sales shall be made up by the Publisher semi-annually as of April thirtieth and October thirty-first and delivered and settled within four months thereafter. Where any such statement or any other record of account between the Author and the Publisher indicates that the work has not earned the amount of royalties advanced, or that the Author has received an overpayment of royalties or is otherwise indebted to the Publisher, the Publisher may deduct the amount of such unearned royalties, overpayment or other indebtedness from any sums then or thereafter due the

decision of the issues between the parties.

Pursuant to the provisions of paragraph 5(a) of said agreement, publisher advanced to plaintiff Stewart H. Holbrook against his earnings from said work amounts aggregating $6,000; $1,000 in 1951, and $5,000 in 1952. Said amounts were included by plaintiffs in their gross income in their tax return for the year in which received. Under this contract said plaintiff received the following cash amounts for the years indicated: 1951—$1,000 (for editorial expenses); 1953—$3,000; 1954—$31,683.58; 1955—$5,170.43. The gross income from said work through the year 1959 was $46,854.01.

By letter dated January 28, 1954, publisher, pursuant to the provisions of paragraph 20, transmitted to said plaintiff its statement as of October 31, 1953. This was the first statement of account between the parties. This statement showed author's royalties earned by the book from the day of publication through October 31, 1953, at $7,105.10. The advances above mentioned were deducted from the royalties due as shown by said account and a charge was made by publisher for indexing in the amount of $76, which was also deducted. The net cash amount remitted to Holbrook was $1,029.10. This covered the accounting period to October 31, 1953.

On their income tax return for 1954 plaintiffs reported income of $31,584 from said work. This amount included the $1,029.10 net cash amount above mentioned. In due course said return was audited by the Commissioner of Internal Revenue and, as a result of such examination, a determination was made by him that there was a deficiency income tax due from plaintiffs in the sum of $3,206.63 for the calendar year 1954, and said amount was assessed against plaintiffs as additional income tax for such year. Of said amount, only $2,636.48 is in dispute. In arriving at his determination as to the disputed portion of the deficiency, the Commissioner refused to permit plaintiffs to compute their 1954 income tax under the provisions of 26 U.S.C. § 1302 (§ 1302 of the Internal Revenue Code of 1954). On October 9, 1957, plaintiffs paid the amount of said disputed assessment for such year to the District Director, plus interest on such tax in the sum of $385.32, making a total of $3,021.80 on the disputed item. A proper claim for refund was filed by plaintiffs and such claim was disallowed in full.

Plaintiffs' Contentions.

I. Plaintiffs contend that the $1,000 advanced on future earnings in 1951 and the $5,000 advanced on future earnings in 1952 were received from publisher as repayable loans and not income and said sums should be included as income in 1954, so that they would be entitled to use the "spread back" relief provided by said § 1302 with respect to the gross income from said work.

II. In the alternative, plaintiffs contend that they are entitled to have their income tax for 1954 computed in accordance with the provisions of 26 U.S.C. § 1341(a), on the theory that they did not have an unrestricted right to the said sum of $6,000 and that it was restored to publisher in 1954.

It is the position of the defendant that the advances made in 1951 and 1952 were payments on the contract and not loans and therefore properly included in the returns as gross income received for the respective years and, as such, were anticipated future earnings and that since the amount of $31,683.58 received in 1954 was less than 80% of the total gross income received from the book, plaintiffs are not entitled to use of the "spread back" provisions of said § 1302.

Author from the Publisher under this agreement.
"Any sums paid to the Author prior to acceptance of manuscript shall be returned to the Publisher if said manuscript is not delivered as specified in Paragraph 4 hereof."

With reference to plaintiffs' second contention, the defendant takes the position that the plaintiffs had at all times an unrestricted right to the use of the $6,000 advanced and, therefore, that the provisions of said § 1341(a) have no application.

█ I. In brief, in order to qualify for the spread back treatment permitted by § 1302, the author must show:

1. That he worked for more than 24 months on the book;

2. He included royalties from the book in his gross income for 1954; and

3. The amount of such royalties includable in 1954 gross income was at least 80% of his aggregate gross income from the book for the years 1954 to 1955, inclusive.

██ Was the $6,000 advanced to plaintiff pursuant to the terms of the contract a loan as claimed by plaintiffs? In order to answer the question I must determine the intention of the parties. Such intention controls the contract's interpretation and when that is ascertained, it is conclusive. Whitney v. Wyman, 101 U.S. 392, 25 L.Ed. 1050. This is the rule in the state of New York where the contract was executed. Ryan v. Ohmer, 2 Cir., 1917, 244 F. 31; Harper v. Hochstim, 2 Cir., 1921, 278 F. 102; Chicago Title & Trust Co. v. Fox Theatres Corp., 2 Cir., 1937, 91 F.2d 907. The intention of the parties to a contract is to be determined by their words, interpreted in light of the circumstances. President Suspender Co. v. MacWilliam, 2 Cir., 1916, 238 F. 159; National Publishing Co. v. International Paper Co., 2 Cir., 1920, 269 F. 903.

█ Business contracts should be construed with business sense as they naturally would be understood by intelligent men of affairs. In re International Match Corp., D.C.N.Y.1937, 20 F.Supp. 420; Erie Railway Co. v. Ohio Public Service Co., 6 Cir., 1932, 62 F.2d 83; E.

I. DuPont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 1933, 64 F.2d 224, 89 A.L.R. 238, certiorari denied 290 U.S. 646, 54 S.Ct. 64, 78 L.Ed. 561.

Keeping the foregoing rules in mind, let us examine the salient portions of the contract. It requires the publisher to publish the work at its own expense and to pay to the author certain royalties on the retail price. Furthermore, it requires the publisher to advance to the author the sum of $6,000 against the total earnings of the author under the agreement. The contract requires the publisher to render to the author semi-annual statements of sales and permits the publisher, on such statements, to deduct unearned royalties on the sums advanced from any sum then or thereafter due the author from the publisher. The language used is, "amount of royalties advanced."

Paragraph 5, with one exception, deals only with *royalties* on the *retail price* of the copies sold. The sole exception is the provision with reference to the payment to the author of $1,000 for editorial expense. At the time the contract was signed in 1951, and at the time the advances were made in 1951 and 1952, *royalties* had a well-defined legal meaning in general and for tax purposes. Commissioner of Internal Revenue v. Affiliated Enterprises, 10 Cir., 1941, 123 F.2d 665. As early as 1934 the regulations promulgated by the Commissioner of Internal Revenue required the taxpayer to include *royalties* in the gross income reported in his return. Revenue Act of 1934, § 119(a)(4).* This requirement, with minor changes of no significance, continued to be part of the published regulations of the Commissioner to and including 1951, 1952 and 1953. § 29.119–5, 1949 ed., Code of Federal Regulations, reads as follows:

"§ 29.119–5. Rentals and royalties. Gross income from sources within the United States includes

---

* Now 26 U.S.C.A. § 119.

rentals or royalties from property located within the United States or from any interest in such property, including rentals or royalties for the use of or the privilege of using in the United States, patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like property. The income arising from the rental of property, whether tangible or intangible, located within the United States, or from the use of property, whether tangible or intangible, within the United States, is from sources within the United States."

Likewise, *royalties* are included in the definition of gross income under the Internal Revenue Code of 1954. 26 U.S.C. § 61(a)(6).

Provisions quite similar, if not identical, to those of § 1302 are contained in § 107(b) of the 1939 Internal Revenue Code, as amended, and in effect at the time the advances were made in 1951 and 1952. Therefore, the fact that the advances for those years were made under one Code and the payments in 1954 were made under another is not significant.

■ ■ Paragraph 20 of the contract distinguishes between "royalties advanced" and the "overpayment of royalties." We are here concerned with *royalties advanced*. While not controlling here, it is a general rule in the federal and state courts that relevant law and regulations existing at the time a contract is made become part of it and must be read into it just as if they were expressly referred to or incorporated in its terms. L. & N. R. Co. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711; Atchison, T. & S. F. Ry. Co. v. Scarlett, 300 U.S. 471, 57 S.Ct. 541, 81 L.Ed. 748; General Electric Company v. Moretz, 4 Cir., 1959, 270 F.2d 780. The author must have anticipated that his royalties under this contract would be subject to a federal income tax and that in making a determination of the nature of the

transaction, for tax purposes, the courts would look to the written agreement and other relevant evidence. In the light of these established rules, the plaintiffs cannot reasonably contend that the author placed any other meaning on *royalties*. It is true that the author testified that he understood the advances were made by way of a loan and the court has no reason to doubt his honesty or integrity. However, his personal understanding is not sufficient. The mental purpose of one of the parties to a written contract cannot change its terms. New York Central Railway Co. v. Mohney, 252 U.S. 152, 40 S.Ct. 287, 64 L.Ed. 502.

■ It is undisputed that plaintiffs reported the $6,000 advanced *as income* in their 1951 and 1952 returns. There is no doubt but that plaintiffs considered the advances as income rather than as a loan during that period. The interpretation of a contract by one of its parties against his interest is strong evidence of the meaning of the contract in a tax case. Natco Corp. v. United States, 3 Cir., 1956, 240 F.2d 398, 403; Cutting v. Bryan, 9 Cir., 1929, 30 F.2d 754. A party's statement concerning intention is of little weight against evidence directly to the contrary. Flynn v. Crume, 7 Cir., 1939, 101 F.2d 661.

In an able argument counsel for plaintiffs urge that the provisions of paragraph 20 of the contract establish that the parties intended the advances as an indebtedness. With that construction I cannot agree. It is urged that the language in this paragraph specifically refers to the advances as an indebtedness. The language does refer to *royalties advanced* and provides that "the publisher may deduct the amount of such unearned royalties, overpayment or *other indebtedness*," then or thereafter due to the author from the publisher. Under the specific language of the paragraph there is no reference to indebtedness until the publisher indicates that the work has not earned the amount of royalties advanced. It is only the *unearned advances* as determined by an accounting between the

author and the publisher which is, under the language of the contract, regarded as an indebtedness. Plaintiffs claim no such accounting. The first accounting for royalties was made on February 28, 1954 for the period ending October 31, 1953. These royalties were sufficient to repay the advances and provide cash to the author in the sum of $1,029.10.

 This case is not unlike one where advances are made on consigned goods. In the state of New York, as in other jurisdictions, it is a general rule that where the principal sum advanced is to be repaid only on some contingency which may never take place, the sum so advanced is considered as an investment and not as a loan. People ex rel. James Talcott, Inc. v. Goldfogle, 213 App.Div. 719, 211 N.Y.S. 122, 127, 128; affirmed 242 N.Y. 544, 152 N.E. 420; State v. Moltzner, 141 Or. 355, 17 P.2d 555; Embola v. Tuppela, 127 Wash. 285, 220 P. 789, 790. It is generally held that income taxes must be paid on income received during the annual accounting period. North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560. In those cases it is held that if a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has *received income* which he is required to report, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. This rule is known as the "claim of right" interpretation of the tax law. Commissioner v. Alamitos Land Co., 9 Cir., 1940, 112 F.2d 648; certiorari denied 311 U.S. 679, 61 S.Ct. 46, 85 L.Ed. 437. This is true even

though the services are to be rendered in the future. Lavery v. Commissioner, 5 T.C. 1283, affirmed 7 Cir., 158 F.2d 859; Bouchard v. Commissioner, 7 Cir., 1956, 229 F.2d 703; Jacobs v. Hoey, 2 Cir., 1943, 136 F.2d 954. The facts in the New York cases, cited by plaintiffs in support of their position that the advances were a loan, have no resemblance to the facts with which we are here concerned. While I agree that the result in this instance works a hardship on a great author, a number of whose works I personally own, my duty is to find the facts and declare the law as it exists. I find as a fact, under the terms, provisions and conditions of the written contract and the testimony as given by the author, that the $6,000 advanced in 1951 and 1952 was an advance on royalties and as such was income to the author, rather than a loan. I find the issues against the plaintiffs and in favor of the defendant on the first point raised.

 II. The plaintiffs contend, as an alternative, that since they did not have an unrestricted right to the use of the $6,000 and that the said sum was restored to the publisher by a bookkeeping entry in 1954, they should be entitled to have their income tax for 1954 computed in accordance with the provisions of 26 U.S.C. § 1341(a).[3] It will be observed that § 1341(a)(2) permits a deduction for the taxable year only after it is established that the taxpayer did not have an unrestricted right to the use of the income. Since I have already held that the taxpayers had the unrestricted right to the use of the income in question, the plaintiffs lack a foundation on which to build their argument. In my opinion § 1341 was intended to cover a situa-

---

3. "§ 1341(a) General rule.—If—

"(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

"(2) a deduction is allowable for the taxable year because it was established

after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

"(3) the amount of such deduction exceeds $3,000, * * * *"

258

tion where the taxpayer was actually compelled to refund moneys which he had previously reported as income. If, in this case, the author had failed to deliver the manuscript and repaid the $6,000 to the publisher, the section would be applicable. The statute applies only to one who does not have an unrestricted right to the amount reported and is required to repay it to the original payor. Furthermore, the author's claim is based entirely on the exemptive provisions of said statute. Statutes containing such exemptive provisions must be narrowly and strictly construed against the taxpayer. Corn Products Co. v. Commissioner, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29, rehearing denied 350 U.S. 943, 76 S. Ct. 297, 100 L.Ed. 823; Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 49, 69 S.Ct. 358, 93 L.Ed. 477; Lindstrom v. Commissioner, 9 Cir., 1945, 149 F.2d 344, 346. In order to bring himself within the exemption the taxpayer must show that he falls within the terms thereof. Barnhart-Morrow Consolidated v. Commissioner, 9 Cir., 1945, 150 F.2d 285. Where there is any doubt as to whether the taxpayers' claim falls within the exemptive statute, the uncertainty is fatal to the claim. United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40, rehearing denied 311 U.S. 729, 61 S.Ct. 390, 85 L.Ed. 475. The rule must be applied even though such construction will cause the taxpayer great hardship. White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; Helvering v. New York Trust Co., 292 U.S. 455, 464, 54 S.Ct. 806, 78 L.Ed. 1361. It is clear that the author has failed to bring himself within the exemptive provisions of the statute. There is no merit in this contention.

I find all issues of law and fact against the plaintiffs and in favor of defendant. This opinion shall stand as my findings. An appropriate judgment shall be prepared, served and presented by counsel for defendant within ten days.