■ C. & C. BLASCHKA, INC., Appellant, v. JAMES R. FRAZER et al., Respondents, et al., Defendant. (And a Third-Party Action.) — In an action to recover damages for breach of a contract for the sale of land, plaintiff appeals from so much of a judgment of the Supreme Court, Nassau County, dated May 11, 1967, as dismissed the complaint as to respondents, on the merits, after a non-jury trial. Judgment reversed insofar as appealed from, on the law and the facts, with costs; and action as between appellant and respondents severed and remitted to the trial court for further proceedings not inconsistent with the views expressed herein. Findings of fact which are inconsistent herewith are reversed and new findings are made as indicated herein. Paragraph "3" of the rider to the contract between appellant (the buyer) and respondents (the sellers) required respondents to install a water supply line by May 15, 1960. Paragraph "1" thereof required respondents, in our opinion, to construct, by April 1, 1960, an access road not merely substantially similar to the 700-foot road from Stewart Avenue to the north side of the Long Island Railroad right of way, but one which would be acceptable for dedication; and we so find. That such was the intention of the parties is amply demonstrated by the facts that said paragraph contained a provision that the road, "upon completion, will be offered for dedication to the Town of Hempstead"; that provision for such a road was prerequisite to obtaining a building permit (see Town Law, § 280-a); and that respondents ultimately constructed such a road at their own expense. Moreover, the construction of such a road would be beneficial to the development of respondents' other nearby land holdings. "There is no surer way to find out what parties meant, than to see what they have done. Self-interest stimulates the mind to activity, and sharpens its perspicacity" (*Insurance Co.* v. *Dutcher*, 95 U. S. 269, 273; see, also, *Old Colony Trust Co.* v. *Omaha*, 230 U. S. 100, 118; *Natco Corp.* v. *United States*, 240 F. 2d 398, 402-403; cf. *Brown* v. *McGraw-Hill Book Co.*, 25 A D 2d 317, affd. 20 N Y 2d 826). Contrary to the contract provisions, the water line was not completed until April, 1961, and a road acceptable for dedication was not substantially completed until February 23, 1961. Accordingly, we find that respondents breached their contract with appellant in these two respects. The contract provisons were absolute in terms and, as stated in *Wheeler* v. *Connecticut Mut. Life Ins. Co.* (82 N. Y. 543, 550), "when a person by express contract engages absolutely to do an act not impossible or unlawful at the time, neither inevitable accident, nor other unforeseen contingency not within his control, will excuse him, for the reason that he might have provided against them by his contract." Relying upon the foregoing breaches of the contract, appellant seeks to recover of respondents consequential damages consisting of lost rent, rent concessions and legal and temporary water supply expenses. Since these damages were occasioned by special circumstances (namely, appellant leased the subject property to a tenant a short time after execution of the contract of sale and thereby obligated itself to erect thereon a building meeting certain specifications, to have the access road "completed in accordance with municipal requirements for dedication" and to make the premises available for occupancy by the tenant "not later than June 1, 1960"), respondents are liable therefor only if it be shown that said circumstances were within the contemplation of the parties at the time of or prior to the making of the contract (see *Czarnikow-Rionda, Co.* v. *Federal Sugar Refining Co.*, 255 N. Y. 33; *Chapman* v. *Fargo*, 223 N. Y. 32; 13 N. Y. Jur., Damages, §§ 46-48). Although the testimony on this issue was in sharp conflict, we find incredible respondents' claim of ignorance to the point that they were not even aware of the purpose for which plaintiff was purchasing the land. The brokers to whom respondents paid a commission knew of the contemplated lease. Moreover, the contract of sale itself, in addition to the

requirements that respondents construct the access road and install a water supply line, contained a representation by respondents that "the zone affecting the premises herein described will permit the erection of a factory or warehouse type building, to be used for light industry" and specifically authorized "the Purchaser herein * * *, prior to closing, [to] enter upon the property for the purpose of erecting an improvement thereon". Additionally, within two months after the contract of sale was executed, respondent Frazer testified before the Zoning Board of Appeals as follows: "I feel morally bound to the applicant here for having sold him a very substantial and very expensive piece of real estate which would be of no value whatsoever if he couldn't build on it." Under the circumstances, we credit appellant's evidence to the effect that the subjects of the lease and the importance of compliance with the dates set forth in the contract were discussed with respondents prior to the actual execution of the contract. We conclude, therefore, that appellant is entitled to recover such damages as are the natural and direct consequences of the breach of contract. It may not be allowed damages which are remote and not directly traceable to the breach or which result from intervening causes. For the purpose of fixing the amount of such damages, we remit the action to the trial court. In connection therewith, the court may reopen the trial for further proof on the issue of damages only. In connection with appellant's claim for lost rent, we note that it seeks to recover the period between June 1, 1960 and about December 15, 1960 (as well as for the period thereafter, as hereinafter indicated), despite the fact that the building was not substantially complete until the latter date. It is undisputed that the building was constructed within a period of four months. Thus, had appellant been successful in obtaining a building permit at the time it originally applied therefor (namely, on February 1, 1960), the building would, in all probability, have been substantially completed on or about June 1, 1960, in accordance with the terms of the lease. Appellant's inability to obtain the building permit until August 16, 1960 was the direct consequence of respondents' delay in complying with section 280-a of the Town Law and section 334-a of the Real Property Law. That delay was caused by respondents' desire to avoid filing a development map, which was prerequisite to the town's acceptance of the road for dedication and to the issuance of a building permit. Compliance with these statutes should and must be presumed to have been within the contemplation of the parties at the date of contract. Nevertheless, we find the record, in its present state, insufficient to determine whether the lease modifications and concessions in rent and other respects were due to causes which naturally flowed from the breach. On the record before us, it would appear that appellant is entitled to recover the rent lost for the period from June 1, 1960, the date when the building would have been completed but for the breach, to February 23, 1961, the date upon which the certificate of occupancy was issued. However, it is uncertain whether the loss of rent (including the rent concessions for the period during which the building was occupied) from February 23, 1961 to April, 1961, when the water line was completed, and thereafter was a direct and natural consequence of respondents' breach. The same is true of the attorney's fees claimed. The sums expended by appellant for temporary water supply were in mitigation of damages and are clearly recoverable. This expense was incurred as a direct result of respondents' failure to complete the water supply line until April, 1961. Brennan, Acting P. J., Munder and Martuscello, JJ., concur; Benjamin, J., concurs in the reversal of the judgment insofar as appealed from and in the severance of the action, but dissents from the directions as to the remission and votes to remit the action, as severed, to the trial court for further proceedings not inconsistent with the following memorandum, in which Rabin, J., concurs:

I am constrained to dissent from the views expressed by the majority in reversing the determination of the learned Justice at Trial Term with respect to paragraph "1" of the contract rider. That paragraph reads as follows: "That the road abutting the premises on the south and west (southside of Long Island Railroad right-of-way) is under construction and will be completed at the Seller's expense, and without expense to the Purchaser, and upon completion, will be offered for dedication to the Town of Hempstead. If the road is not completed in a manner substantially similar to the 700 foot roadway from Stewart Avenue to the northside of the Railroad Right-of-Way (which road has been offered for dedication and acceptance by the Town of Hempstead) by April 1st, 1960, Purchaser may complete construction of said road on similar specifications at Seller's expense. This agreement will survive the signing of the deed." The contract of sale was executed on January 5, 1960. Title closed on February 3, 1960. On February 1, 1960 appellant applied for the requisite building permit to erect a commercial structure upon the premises being acquired and which had already been leased to a tenant. To the surprise of all the parties it then developed that a building permit would not issue as the Town of Hempstead would not accept for dedication the road under construction unless the parties added a cul-de-sac and a sump. The trial court found, and in my opinion properly, that the contract of sale contemplated precisely what its language calls for, to wit: a road the physical structure of which would be substantially similar to the road to the north of the Long Island Railroad and then, upon completion, the offering of the road to the town for dedication. The majority of the court reject the trial court's findings of law and fact so clearly supported by the language of the contract and the intention of the parties as determined by the evidence adduced at the trial, and hold as a matter of law that what the parties really intended was that respondents construct and deliver for appellant's use, by April 1, 1960, any road, of any structural design and dimension which might be required by the town authorities as a condition to its acceptability for dedication, and hold further as a matter of law that the failure to complete such road of unknown character as well as a cul-de-sac and sump by April 1, 1960 constitutes an absolute breach of the contract entitling appellant, without else, to damages for the delay in the completion of the building erected on the premises. The majority, therefore, are remitting the case to the trial court merely for an assessment of the damages which flowed from the claimed breach of contract as a matter of law. It is clear that the parties contemplated the building of an extension of the northern road for the benefit of the subject property and that they expected to offer such extension for dedication and acceptance by the town. Concededly, the north road had proven acceptable to the town. In addition, no building permit could be issued unless and until satisfactory access roads were agreed upon with the town authorities as required by the Town Law. Such circumstances, however, certainly do not support a finding that, no matter what demand the town would make as a condition for the acceptance of a road for dedication (as for instance the construction of a six-lane concrete highway or, as here, a cul-de-sac and sump), this contract constituted an obligation as a matter of law upon respondents not merely to comply with such demand for something more than was within the contemplation of the parties at the time of contract, but, in addition, to comply within the original law date of April 1, 1960, less than two months from the time of the closing of title. By the terms of the rider the parties provided a remedy in the event of the failure to complete the road by April 1 in the following language: "If the road is not completed in a manner substantially similar to the 700 foot roadway from Stewart Avenue to the northside of the Railroad Right-of-Way

(which road has been offered for dedication and acceptance by the Town of Hempstead) by April 1st, 1960, Purchaser may complete construction of said road on similar specifications at Seller's expense." Clearly the quoted portion was intended to give appellant, the purchaser, an alternate remedy to a court action if respondents failed to perform on their promise. The nature of the promise can be gleaned from the remedy — the purchaser may complete construction on the road already under construction at the seller's expense but only "on similar specifications", i.e., similar to those of the north road. It is reasonable to assume that if a broader promise were intended the remedy would have been made co-extensive with the promise. It appears more logical on this record to hold that if the demands of the town were found to be so extensive as to make it impracticable for the sellers of the property to comply therewith, the parties would have been entitled to rescind the agreement for impossiblity of performance rather than to a holding that the contract mandates the performance of any condition, however impracticable, that the town might have sought to impose, and to such performance within the original narrowly limited law date. The problems in this case sprang from the circumstance that the Town of Hempstead demanded as a condition to the acceptance of the proposed road that a cul-de-sac be added and a sump constructed. Nothing in the contract indicates that the parties contemplated the need for a cul-de-sac or sump. No inference adverse to respondents can be drawn as to the intention of the parties from the circumstance that respondents, despite the tremendous cost of performance, amounting to approximately $90,000, proceeded at their own cost and expense to alter the plans and complete the construction of the road as well as the cul-de-sac and sump. In addition to the property sold to appellant, respondents owned a substantial plot of landlocked acreage which could be opened for development only by the building of such road as the town would accept. Respondents had no alternative, therefore, but to comply in order to make their remaining acreage available for economic development. Significant, moreover, is the fact that in order to satisfy the town demands appellant made available to respondents a portion of the land contracted to be acquired by it without abatement of the purchase price. It could hardly be expected that these respondents could, in the less than the two-month interval between February 3 and April 1, or even the three-month period from the date of contract signing, prepare the appropriate maps, arrive at an agreement with the town authorities concerning their requirements, deal with the necessary administrative procedures such as inspections, examinations, hearings and all the other details requisite to the obtaining of the appropriate consents and certificates, and erect and build the altered road with its cul-de-sac and sump. In point of fact, the preliminaries were not completed until August, 1960, when the subdivision map was filed as approved and the building permit issued. Even were we to hold as the majority does, that this additional work was legally incumbent upon respondents, then certainly, before casting them in damages as a matter of law for their failure to complete this non-contemplated road alteration and additional construction by the law day of April 1, 1960, a finding would be required as to the possibility of such performance. My learned colleagues, however, by their majority opinion are holding that damages flow as a matter of law from the failure to complete such non-contemplated work by April 1, 1960, without regard to the obvious impossibility of performance by that date. In any event, it necessarily follows that no liability for damages would ensue if the resulting delay of performance was excusable because of the impossibility of performance within the law date. Strict impossibility is not required; rather it would be sufficient to excuse performance if a showing is made of impracticality due to extreme and unreasonable difficulty,

expense, injury or loss (Restatement, Contracts, § 454). Further, in the event the majority are correct it would still be necessary for a court to determine whether time was the essence of the contract and whether intervening causes, circumstances and agreements between appellant and its tenant occasioned or contributed to any portion of the delay of final completion. Significant indeed are the extensions and agreements made by appellant with its proposed tenant, all of which would be relevant with respect to the actual damages, if any, flowing from the claimed breach of contract. I believe, too, my colleagues are in error in remitting for an assessment of damages measured by the loss of rentals, since lost rentals would in no event constitute a proper measure. Damages should be measured by the loss of earnings occasioned by the delay rather than by the gross rentals for the period of such delay. Turning to other of appellant's allegations, I agree that respondents failed to perform their agreement to install a water line within the time specified in the contract. However, consistent with my view that the failure of the building to be completed until December, 1960, was caused by the inability to secure a building permit until road plans were changed and not by any breach of contract, damages, if any, would be available only for losses which were the consequence of other inexcusable delay in installing the water line. These would include the net rents lost plus expenses relating to the well, but not the legal expenses claimed, and would be limited to the period following completion of the building construction during which a certificate of occupancy could have been obtained, but was not obtained due solely to the lack of an adequate water supply. The measure of damages would not include any rent concessions made, as the record shows them not to have been occasioned by delay in the installation of the water line. In sum, I would remit the action to the trial court to make appropriate findings not inconsistent herewith with respect to what damages, if any, are chargeable to any inexcusable delays in the completion of the water line.